100 N.J. Super. 241 (1968)
241 A.2d 647
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY BLANCA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1968.
Decided April 2, 1968.
*244 Before Judges GOLDMANN, KILKENNY and CARTON.
Mr. Samuel H. Davis, Assigned Attorney, argued the cause for appellant.
Mr. John D. Grossi, Assistant Prosecutor, argued the cause for respondent (Mr. James A. Tumulty, Jr., Prosecutor of Hudson County, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant appeals as an indigent and with the aid of assigned counsel from convictions of armed robbery (N.J.S. 2A:141-1 and 2A:151-5) and of carrying concealed pistols in an automobile without first having obtained a permit to carry the same (N.J.S. 2A: 151-41). He was found guilty after a jury trial and was sentenced to concurrent indeterminate terms at Bordentown Reformatory.
Three others  Massey, Foster and Reid  were jointly indicted and tried with defendant Blanca for the same offenses, but this appeal is by Blanca alone.
At the outset, defendant's attorney on appeal frankly concedes that certain grounds advanced by the assigned trial attorney for dismissal of the indictments against defendant are without legal merit. We agree. We mention them for the sake of completeness.
Defendant moved for a dismissal at trial on the following grounds: (1) he had not been shown the original indictment; (2) he had not been present at the grand jury proceedings; (3) he had not been advised of his constitutional rights under the Miranda doctrine, and (4) no attorney represented him at the arraignment in municipal court. As to (1), the original indictment is on file with the county clerk, pursuant to R.R. 3:4-1(b), and the assigned trial *245 counsel received a copy as required by R.R. 3:5-1. As to (2), defendant was not entitled under R.R. 3:3-6 to be present or have anyone present during the grand jury proceedings. As to (3), Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not applicable because defendant did not testify and no police officer testified as to any statements made by him. As to (4), defendant was in no way prejudiced by the absence of an attorney at the preliminary hearing before the municipal magistrate. State v. Hale, 45 N.J. 255, 263 (1965), certification denied 384 U.S. 884, 86 S.Ct. 1981, 16 L.Ed.2d 1001 (1966), is dispositive of this contention.
Defendant's attorney on appeal also candidly admits that he considered challenging the propriety of the procedure used by the police when defendants were identified at the police station in Jersey City and later at the county jail, in view of recent decisions of the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). However, the doctrine of those cases affects only pre-indictment identifications made after June 12, 1967. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Defendant's identifications preceded that date, having been made in 1966. Cf. State v. Sinclair, 49 N.J. 525, 544-547 (1967).
We deem it expedient also to note at the outset that defendant's brief does not challenge his conviction on the charge of armed robbery. Its three points are directed to the concealed weapons charge. In its conclusion we are asked only to reverse "the conviction of defendant Blanca on the charge of carrying a concealed weapon in a motor vehicle."
The State's proofs clearly establish that on April 9, 1966, just before the 10 P.M. closing time, an armed robbery was committed by three Negro males at Irv's Liquor Store, 1067 Avenue C, near 52nd Street, in Bayonne, New Jersey. Two of the robbers, one of whom was identified as Blanca, pointed *246 pistols at Esther Botwinik, one of the co-owners of the store, and took over $900 in cash from the register, a $26.50 check given that day by a customer in payment of liquor purchased, some 70-odd dollars from Mrs. Botwinik's purse, and a bottle of scotch whiskey, Johnny Walker Red Label, from a shelf as the robbers departed. Upon their arrest within an hour's time, Blanca was identified as one of the robbers who held a gun while the robbery was being perpetrated.
Blanca did not testify and he called no defense witnesses. Nor did Massey or Foster, who were identified before and at trial as the other two of the three who actively participated in the commission of the crime. The only defendant to testify was Reid, the owner and driver of the automobile in which the other three were riding when taken into custody. We need not discuss Reid's claim of innocence. His automobile was, according to Reid, at 53rd Street and Broadway in Bayonne, not far from the scene of the robbery, at the time the robbery was committed.
Immediately following the robbery, Esther's son, Stuart, who witnessed the crime, and two store employees who came upon the scene while the crime was being committed, went by automobile to find the fleeing robbers. They had gone about three minutes and nine blocks to 59th Street and the Boulevard when Stuart observed an automobile with apparently nervous male Negroes in it, one of whom looked like one of the robbers. The color and license number of the car were noted as they followed in close pursuit, both vehicles proceeding northly toward Jersey City. The police were notified, a county-wide radio alert went out from Bayonne police headquarters, and the suspected car was ultimately stopped by the Jersey City police at 120 Summit Avenue in that city, about a block and a half from where Reid, the owner-driver, lived.
Blanca was in the front passenger seat, Massey was behind him in the rear. Foster was also in the rear behind the driver Reid. The police who had followed them in a patrol squad car ordered the four out of the vehicle and frisked each at the *247 scene. As Massey pushed the front seat of this two-door car forward, the police saw a loaded pistol in plain view on the floor of the rear of the car. They also saw a bottle of Johnny Walker Red Label and some clothing, which they seized. A crowd had begun to gather and the four, as well as the car, were taken to Fourth Precinct to unsnarl the traffic and for the sake of convenience in making further searches.
Search of Foster disclosed that he had in his pocket a roll of bills amounting to $901, with which there was the check stolen from the cash register. Massey had $74 in cash. Thus, these items and the bottle of scotch tallied with the cash, check and bottle taken during the robbery. The clothing was later identified as that worn by the robbers.
About ten minutes after the police brought the suspects to the Fourth Precinct, Stuart Botwinik, who had witnessed the crime and the use of two guns, called this to the attention of Sgt. Kelly, who then had only the one pistol found in the rear of the car. The sergeant and another police officer went out and continued to search the automobile. They found another automatic pistol under the rubber mat at the front seat where defendant Blanca had been sitting when the police stopped the car. Thus, two pistols found in the car tallied with two pistols used at the time of the robbery. The search of the four occupants and the car revealed only these two pistols.
We now consider the three grounds urged for reversal of the concealed weapons conviction.

I
Defendant argues that his conviction under N.J.S. 2A: 151-41 must be set aside because of the absence of proof that he failed to obtain a permit to carry a firearm.
Concededly, there was no proof at trial that this defendant did or did not have the statutorily required permit.
N.J.S. 2A:151-41 provides in pertinent part:
*248 "* * * any person who carries in any automobile * * * or otherwise concealed in his possession:
(a) A pistol * * * without first having obtained a permit to carry the same in accordance with the provisions of this chapter; * * *.
Is guilty of a misdeameanor."
From this language defendant argues that failure to obtain a permit is an essential element of the crime and must be proved by the State. He contends that to require him to come forward with proof would violate his constitutional rights, including the right against self-incrimination.
We cannot see how a defendant would incriminate himself by the production of exculpatory evidence  the permit, if he had one. That evidence could be produced even without defendant's taking the stand. For example, the official records could establish the fact. No such proof was offered.
We held in State v. Rabatin, 25 N.J. Super. 24 (1953), certification denied 13 N.J. 361 (1953):
"The fact that the State failed to prove that the defendant did not first obtain the requisite permit to carry the revolver is of no aid to the defendant. It was not incumbent upon the State to show that no permit had been issued to the defendant." (at pp. 30-31).
We reasoned that the truth or falsity of the averment lay more immediately within the knowledge of the defendant himself and the onus probandi rested upon him.
In State v. New York Central Railroad Co., 37 N.J. Super. 42 (1955), we reiterated this rule, stating:
"Where the charge or indictment includes a negative averment, the truth or falsity of which lies peculiarly within the knowledge of the defendant, the burden of evidence, or of going forward with proof on that issue, as distinguished from the burden of proof, rests with the defendant." (at p. 51).
We have been referred to no case overruling or modifying State v. Rabatin, supra. On its authority, we deem defendant's first point not a sound basis for reversal.

*249 II
The next claim made by defendant is that N.J.S. 2A: 151-7 is unconstitutional and the trial court's quotation of it in charging the jury constituted reversible error.
N.J.S. 2A:151-7 provides:
"The presence of a firearm * * * in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time."
The trial judge read this section of the law to the jury. He also instructed them, however, that to convict a given defendant the State was required to prove beyond a reasonable doubt that he was aware of the presence of the guns in the automobile and was able to exercise intentional control over them.
Defendant argues that there is no logical basis for an inference or presumption of possession of a firearm by an occupant of an automobile merely from the fact of its presence in the car in which he is riding.
We recently considered the validity of N.J.S. 2A:151-7 in State v. Lewis, 93 N.J. Super. 212 (1966), certification denied 386 U.S. 986, 87 S.Ct. 1297, 18 L.Ed.2d 238 (1967). There, a gun was found in the pocket of a coat of one of the occupants of the automobile. We held that N.J.S. 2A:151-7 could not, under those circumstances, be held applicable to all occupants of the car. In reaching our decision, we assumed the constitutionality of this statutory provision but did not expressly determine that issue.
It seems to us that the validity and applicablity of N.J.S. 2A:151-7 must be judged in the light of the totality of the circumstances in a particular case. For example, if an owner-driver of an automobile had a gun locked in the glove compartment or trunk of his car, to which he held the key, it would violate common sense to conclude that other occupants of the vehicle might be presumed to be in possession of it, and especially where they were unaware *250 of its presence and had no power of control over it. The trial judge made that clear to the jury when after reading the statute, he told them that conviction required proof by the State beyond a reasonable doubt that the occupant must have been aware of the presence of the gun and able to exercise intentional control over it.
We have similar situations based upon common law principles. For example, every child is presumed to be legitimate. But if the mother and her husband are both Caucasian and the child is a mulatto, the presumption may not logically be drawn. Cf. In re Findlay, 253 N.Y. 1, 170 N.E. 471 (Ct. App. 1930). So, too, if a person is found in possession of the fruits of a recent crime, an inference may be drawn of guilty possession. Thus, we speak colloquially of a person "caught with the goods." But the circumstances may leave it to the jury to draw the inference. Cf. People v. Galbo, 218 N.Y. 283, 112 N.E. 1041 (Ct. App. 1916).
In the instant case, two pistols were used in perpetrating this Bayonne robbery  one was in the hand of defendant Blanca; the other in the hand of his confederate Massey. When the police stopped the automobile in which they were riding within the hour, two, and only two, pistols were found in the car. One was alongside Massey on the floor in the rear where he was seated; the other under the rubber mat in the front where defendant Blanca was seated. Each was loaded and each was readily available for use by the same two persons who had used them at the liquor store. Moreover, the one under the rubber mat in the front at Blanca's feet  Exhibit S-1  was identified by Stuart Botwinik and Stanley Piatowski as the one held by Blanca during the robbery; and pistol  Exhibit S-2  found in the rear alongside Massey was identified by Stuart as the kind Massey used.
Under the circumstances the trial judge's reading of N.J.S. 2A:151-7 to the jury with the limitations noted above was not reversible error. We might also note that a similar statute has been upheld as constitutional in New York. Cf. People v. Russo, 303 N.Y. 673, 102 N.E.2d 834 *251 (Ct. App. 1951), affirming 278 App. Div. 98, 103 N.Y.S.2d 603 (App. Div. 1950).

III
Defendant's final point is that his motion prior to trial to suppress the evidence of the second gun found under the rubber mat should have been granted because that subsequent search and seizure was illegal.
Obviously, no claim of illegal search and seizure could validly be made as to the first pistol, which was in clear view and seized by the police as the occupant stepped out of the vehicle. That gun was revealed without a search. Cf. State v. Griffin, 84 N.J. Super. 508, 517 (App. Div. 1964).
But defendant argues that the search of the vehicle by the police without a warrant after they and their car had been brought to the Fourth Precinct headquarters violated their constitutional rights.
We find no merit in this argument. Defendant and his fellow robbers were taken into custody by the Jersey City police on the basis of probable cause to believe that they had committed a robbery in Bayonne. They personally, and the automobile in which they were riding, tallied with the description given to the Bayonne police by persons who witnessed the robbery. Moreover, the presence of the pistol on the rear floor of the car also furnished probable cause for their arrest.
Since there was legal justification for the arrest without a warrant, it follows that the police were legally justified in searching defendants and the car incidental to that arrest. The gathering crowd on Summit Avenue, where they were apprehended, with the resulting blocking of traffic, as testified to by Sgt. Kelly, entitled the police, as a matter of convenience, to take the defendants and the car to headquarters for a more adequate search there. The fact that only one gun was first observed would not preclude a continued and more intensive search of the car some ten minutes *252 later when a witness to the crime informed the police that two guns were used.
See State v. Fioravanti, 46 N.J. 109, at p. 124 (1965), certiorari denied 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed.2d 440 (1966), where our Supreme Court indicated that a search need not be made at the "precise moment" of the arrest when "a more prudent or equally prudent course is to move the car and its contents to a more convenient or suitable place for the search." See, too, State v. Boykins, 50 N.J. 73, 78 (1967).
For the foregoing reasons, the judgments of conviction for armed robbery and for carrying pistols concealed in an automobile without the necessary permit are affirmed.