STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
CHARLES RILEY, DEFENDANT-RESPONDENT.

Argued October 21, 1975—Decided January 27, 1976.

See also 69 *N. J.* 222.

*Mr. Peter N. Gilbreth,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Leonard A. Cinaglia* argued the cause for respondent (*Mr. Edward L. Gatier,* attorney).

The opinion of the Court was delivered by

SULLIVAN, J. Defendant was indicted on a charge that he unlawfully "possessed in a vehicle, to wit, an automobile, a rifle" without having first obtained a firearms purchaser identification card, contrary to *N. J. S. A.* 2A :151–41. There were two other persons in the automobile with defendant at the time, one of whom, the owner of the rifle, had been issued such a card. Following a trial and a jury verdict of "guilty of constructive possession," the trial judge, on defendant's motion, set aside the jury verdict and entered a judgment of acquittal, holding in effect that where all three occupants of the automobile were in joint possession of the rifle and one of them had a firearms purchaser identification card, the requirements of the statute were met as to all of those in joint possession of the rifle.

The State, pursuant to *R.* 2 :3–1(b) (3), appealed the judgment n.o.v. and the Appellate Division affirmed on the same grounds given by the trial judge. We granted the State's petition for certification. 68 *N. J.* 150 (1975). We reverse and reinstate the jury verdict of guilty.

The evidence showed that in the early morning hours of December 30, 1972, Joseph Shipley, James Meadows and defendant decided to "jack" for deer.[1] Shipley brought along

---

[1] Jacking involves shining a high-powered light at a deer. When the deer looks at the light it becomes temporarily immobilized and is easy to shoot.

a Winchester rifle which he had purchased after having been issued a firearms purchaser identification card. The three men used Meadows' car which was equipped with a high-powered portable searchlight. Defendant sat in the back of the car. There was some dispute as to where the rifle was located. Shipley, who testified as a State witness, said it was in the back of the car with defendant who was to shoot a deer if one was spotted. However, the State conservation officer, who saw the occupants of the car "lighting for deer," gave chase and eventually overtook the car, testified that he found the rifle lying lengthwise on the console between the two front bucket seats.

The statute which defendant was charged with violating is part of our Gun Control Act, *N. J. S. A.* 2A:151–1 *et seq.,* and in pertinent part reads as follows:

*N. J. S. A.* 2A:151–41.
"Except as hereinafter provided, any person who carries, holds or possesses in any automobile * * * or other vehicle * * * or in his possession or under his control in any public place or public area:
* * * * * * * *
b. A rifle or shotgun without first having obtained a firearms purchaser identification card in accordance with the provisions of this chapter * * *
c. * * * is guilty of a high misdemeanor."[2]

The statutory provisions concerning a firearms purchaser identification card are contained in *N. J. S. A.* 2A:151–32 *et seq.,* the relevant portions of which may be summarized as follows. Section 32 provides that no person shall receive, purchase or otherwise acquire a rifle shotgun unless such person possesses and exhibits a firearms purchaser identification card (hereinafter identification card) and signs a written certification on a prescribed form stating that he presently complies with the requirements of Section 33. (There is an exception for inheritance or legacy not here applicable.)

---

[2]The Act contains specified exceptions to its application. However, defendant made no contention before the Appellate Division, nor does he now assert, that he came within any of these exceptions.

Section 33 lists the disabilities which will disqualify a person from being issued an identification card. They include conviction of crime, drug dependency or habitual drunkenness, mental disorder, physical defect or sickness which would make it unsafe for a person to handle firearms, being under the age of 18 years, etc.

Section 34 empowers the chief of police of an organized full-time police department of the municipality where the applicant resides, or the Superintendent of the State Police, on application, to issue an identification card to any person qualified under the provisions of Section 33.

Section 35 prescribes the form of application and information to be furnished, including whether the applicant is addicted to alcohol or drugs, has ever been confined, committed, attended or treated for a mental or psychiatric condition and if so when and where; whether the applicant is or has been a member of any organization which advocates or approves the commission of acts of force and violence either to overthrow the Government of the United States or of this State, or which seeks to deny others their constitutional rights; and whether the applicant has ever been convicted of a crime, or disorderly persons offense. It also requires that the fingerprints of the applicant are to be obtained and compared with available fingerprint records, and the application is to be otherwise investigated to determine whether the applicant is subject to any of the disabilities set forth in the Act.

From the foregoing it is seen that a firearms purchaser identification card acts as a certification as to the mental, physical and moral qualifications of the person to whom the card is issued and authorizes that person to engage in certain activities involving rifles and shotguns.

The identification card serves a dual purpose under the statute.. First, it acts as a legal permit to the person to whom the card is issued to purchase or acquire a rifle or shotgun. *N. J. S. A.* 2A:151–32. Second, the holder of a card may lawfully carry, hold or possess a rifle or shotgun

in a vehicle or in any public place or public area. *N. J. S. A.* 2A:151–41(b). The prescribed form of identification card states that the person to whom the card has been issued "is hereby granted permission to purchase and carry rifles and shotguns pursuant to provisions of *N. J. S.* 2A:151–32 and 41 with amendments and supplements."

The card is not a registration for a particular rifle or shotgun and does not indicate what rifle or shotgun has been purchased or acquired thereunder. Indeed, the holder of an identification card is not restricted as to the number of rifles or shotguns he may acquire or possess. *N. J. S. A.* 2A:151–39.

■ We turn to the facts of this case. The State produced evidence that the rifle was in the back of the car where defendant was sitting and that defendant was to shoot a deer if one was spotted. Aside from the statutory presumption of possession by all persons occupying the vehicle at the time, *N. J. S. A.* 2A:151–7, these proofs were clearly adequate to support the jury verdict that defendant had constructive possession of the rifle. Both the trial judge and the Appellate Division also found that all of the occupants of the vehicle were in joint possession of the rifle.[3]

■ The critical question is whether the identification card issued to Shipley, one of the joint possessors, also protected defendant's possession.

It is clear that it did not. As heretofore noted, the card was personal to Shipley. It authorized Shipley to engage in certain activities regarding rifles and shotguns, but not anyone else.

While Shipley's possession of the rifle in the automobile was lawful, by virtue of his having obtained the requisite identification card, defendant's possession was a violation of

---

[3] Of course, if Shipley were shown to have been in sole and exclusive possession of the rifle in the automobile, defendant would not have been in violation of *N. J. S. A.* 2A:151–1. The charge against defendant was bottomed on defendant's possession of the rifle.

*N. J. S. A.* 2A:151–41 because he did not possess such a card, *i. e.,* he had not been certified as possessing the requisite mental, physical and moral qualifications for such activity.

The judgment of the Appellate Division is reversed, the verdict of the jury is reinstated and the case remanded to the trial court for sentencing.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.