STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT KEITH STEWART, DEFENDANT-RESPONDENT.

Argued October 24, 1983—Decided June 25, 1984.

*Katherine F. Graham,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Mark H. Friedman*, Assistant Deputy Public Defender, argued the cause for respondent (*Joseph H. Rodriguez*, Public Defender, attorney).

The opinion of the Court was delivered by

WILENTZ, C.J.

This case raises questions concerning the scope of the mandatory sentencing provisions known as the Graves Act, *N.J.S.A.* 2C:43–6, *L.*1981, *c.* 31,[1] and the proper procedures to be followed in sentencing a criminal defendant under the Act. Specifically, we are asked to determine what constitutes possession of a firearm for purposes of the Graves Act. Further, we must define the procedure trial courts should use to decide the question of possession or use of a firearm, the critical fact in determining whether the Act applies. We also apply our holding in *State v. Des Marets*, 92 *N.J.* 62 (1983), which makes clear that possession of a weapon without intent to use it suffices to trigger the Graves Act.

This case stems from a robbery of William Hampton that occurred in Atlantic City on May 25, 1981. At trial, Hampton testified that he had been standing on a corner waiting for a bus when defendant, Robert Stewart, leaped out of the pickup truck in which Stewart had been a passenger, stuck a flare gun in Hampton's side, and robbed him of $50.

---

[1]At the time of the offense the Act provided in part that:

A person who has been convicted under 2C:39–4a. or of a crime under any of the following sections: 2C11–3, 2C:11–4, 2C:12–1b., 2C:13–1, 2C:14–2a., 2C:14–3a., 2C:15–1, 2C:18–2, 2C:29–5, who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in 2C:39–1f., shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or 3 years, whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole. [*N.J.S.A.* 2C:43–6(c) ].

Defendant's version of the case was quite different. Stewart testified that on May 25 he and two friends, Timothy Longnecker and David Blewitt, drove by truck to Atlantic City to go gambling. At the time of the robbery, defendant was seated in the truck's cab between Blewitt and Longnecker. A flare gun was sitting on the dashboard and two air rifles were behind the seat.

When the truck stopped for a red light, Hampton, who was standing on a corner, pulled out a bag of marijuana and offered it for sale. When the light changed, defendant snatched the bag. As the truck drove away, Hampton alerted the police. Aware that the truck was being followed, Stewart threw the exposed flare gun behind the seat, out of view.

When the police pulled the truck over, the flare gun and the two air rifles were found in the well behind the seat of the truck.

Defendant was indicted on June 9, 1981, and charged with conspiracy to commit robbery, *N.J.S.A.* 2C:5–2; armed robbery, *N.J.S.A.* 2C:15–1; possession of a weapon (the flare gun) under circumstances not manifestly appropriate for lawful use, *N.J. S.A.* 2C:39–5(d); possession of two rifles without the necessary permits, *N.J.S.A.* 2C:39–5(c)(1); and possession of a flare gun for unlawful purposes, *N.J.S.A.* 2C:39–4(d). The court dismissed the charges of possession of a rifle without the necessary permits.

The jury acquitted defendant of the conspiracy to commit robbery, armed robbery, and weapons possession charges, but convicted him of second degree (unarmed) robbery.

To determine whether to apply the Graves Act, the court gave the jury the following interrogatory to answer if it found defendant guilty of robbery: "If so, in the course of committing or attempting to commit the crime including the immediate flight therefrom did he use or was he in possession of a firearm?" The jury answered "Yes." Accepting this finding, the court sentenced defendant to a term of five years, three of

which were to be served without parole eligibility pursuant to the Graves Act.

On appeal, the Appellate Division vacated defendant's sentence and remanded the matter to the trial court for resentencing, finding defendant was not in possession of a firearm within the meaning of the Graves Act. 186 *N.J.Super.* 517.[2] According to the court, the Graves Act required proof of intent to use a firearm as well as possession. The court also held that only actual possession of a firearm can trigger application of the Graves Act. *Id.* at 525.

Subsequently, we decided *State v. Des Marets*, 92 *N.J.* 62 (1983), and held that mere possession of a firearm, without a showing of intent to use, was a sufficient ground for application of the Graves Act.

The State petitioned for certification, which was granted on February 7, 1983. 93 *N.J.* 271 (1983).

I.

■■ The Graves Act provides that anyone who uses or possesses a firearm while committing, attempting to commit, or fleeing after the commission of certain designated crimes shall be sentenced to prison for a mandatory minimum term prescribed by the Act. As we stated in *Des Marets*, 92 *N.J.* at 68, the intent of the Graves Act is clear: "[A]t the very least to insure incarceration for those who arm themselves before going forth to commit crimes." It seeks to deter crime, not to rehabilitate criminals. Guided by this purpose, we found that the Act applied to defendant Des Marets, although he did not intend to use the weapon he possessed when committing one of the crimes enumerated in the Act.

---

[2]The Appellate Division noted that it accepted defendant's testimony as the factual basis for appeal because it was clear that the jury, in acquitting defendant of armed robbery and of two weapons possession charges, had relied on it. 186 *N.J.Super.* at 518.

The Appellate Division below interpreted "possession" for the purposes of the Graves Act as actual possession requiring intent to use. It held that constructive possession of a firearm does not trigger a mandatory minimum sentence. That court's interpretation of "possession" for Graves Act purposes was partially repudiated by our holding in *Des Marets:*

> The statute itself requires "possession" and no more. The use of that unqualified word, especially as part of the phrase "used or was in possession of a firearm" strongly suggests that the actor's state of mind was meant to be irrelevant. ... Even if a criminal has no intent to use his gun, the possession of a firearm presents definable dangers. It invites gun use by police or third parties, with attendant risks to all involved. More obviously, while an individual may have no intent to use a gun when he embarks upon a course of criminal conduct, this resolution could change under the pressure of ensuing events.
>
> It is the mere presence of guns at the scene of crimes that this statute seeks to end. [92 *N.J.* at 68–70 (footnotes omitted)].

Applying this reasoning to the present case, the Appellate Division's conclusion that defendant, Stewart, did not possess any weapons with the intent to use them during the robbery becomes immaterial. Rather, at issue here is whether possession for Graves Act purposes may encompass constructive possession. Specifically, does the presence of the flare gun on the dashboard establish possession of a weapon within the meaning of the Graves Act? We hold that it does.

The trial court defined constructive possession for the jury as "possession in which the property is so located that [the possessor] is aware of the presence of the property and is able to exercise intentional control over it should he wish to do so" or "knowingly has the power and the purpose at a given time to exercise control over a thing either directly or through another person or persons."

As we noted in *Des Marets*, possession is not defined in the Graves Act. It is thus our task to define the term, at least for the purpose of this case, with the language, intent, and purposes of the Graves Act in mind.

As an initial matter, we note that possession has been defined, in its broadest sense, to include both actual and constructive possession. We recently stated:

Criminal "[p]ossession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time", *State v. Davis*, 68 *N.J.* 69, 82 (1975), accompanied by knowledge of its character, *State v. Reed*, 34 *N.J.* 554, 557 (1961); *State v. Reyes*, 98 *N.J.Super.* 506, 512 (App.Div.), *cert.* [*sic.*] den., 51 *N.J.* 582 (1968); see *State v. Labato*, 7 *N.J.* 137, 148 (1951); also *State v. Humphreys*, 54 *N.J.* 406, 413–414 (1969). Such possession can be constructive rather than actual. Physical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists. [*State v. Brown*, 80 *N.J.* 587, 597 (1979) ].3

In *State v. Humphreys*, 54 *N.J.* 406 (1969), a jury convicted defendant of unlawful possession of a weapon in an automobile. The Court held that given the statute providing that the presence of a firearm in a vehicle is presumptive evidence of possession by all persons occupying the vehicle, a jury could infer that defendant, a front seat passenger, was in possession of the gun, found protruding from the cushions of the car's back seat.

In *State v. Riley*, 69 *N.J.* 217 (1976), the jury found defendant guilty of "constructive possession" of a rifle in a vehicle without a purchaser identification card. *N.J.S.A.* 2A:151:41. Defendant had been in the back seat of a car from which he and his companions were hunting deer. In reinstating the jury's verdict this Court commented:

The State produced evidence that the rifle was in the back of the car where defendant was sitting and that defendant was to shoot a deer if one was spotted. Aside from the statutory presumption of possession by all persons occupying the vehicle at the time, *N.J.S.A.* 2A:151-7, these proofs were clearly

---

3See also *N.J.S.A.* 2A:151-7, predecessor to *N.J.S.A.* 2C:39-2, which provided in part that

the presence of a firearm ... in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time.

A conviction under this statute was upheld by this Court in *State v. Humphreys*, 54 *N.J.* 406 (1969). *See also State v. Riley*, 69 *N.J.* 217 (1976); *State v. Blanca*, 100 *N.J.Super.* 241 (App.Div.1968).

adequate to support the jury verdict that defendant had constructive possession of the rifle. [*Id.* at 221].

In *State v. Blanca,* 100 *N.J.Super.* 241 (App.Div.1968), a conviction of a defendant under this same statute was upheld. Possession based on the statutory presumption could be found, the court ruled, where the court's instruction made clear that "conviction required proof ... that the occupant must have been aware of the presence of the gun and able to exercise intentional control over it." *Id.* at 250.

■ As noted above, the goal of the Graves Act is to remove guns from the scene of crimes.[4] Any gun within easy reach of any participant in a criminal episode invites violence. In this case, the defendant had only to extend his hand in order actually to possess the flare gun. It was more easily accessible than it would have been in his pocket. Hampton, the victim, could have grabbed for the weapon himself or, the presence of the flare gun and Stewart's ability to have immediate actual possession might have provoked him to draw his own weapon, if he had one. This ability to exercise imminent control over the firearm presents some of the same dangers as actual possession presents, dangers that the Legislature sought to eliminate. Accordingly, we hold that possession of a firearm for purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession.

Limiting the definition of possession for Graves Act purposes to actual possession[5] and constructive possession immediately

---

[4]We note that the Graves Act's use of the phrase "firearm as defined in 2C:39–1f," a provision that encompasses both loaded and unloaded instruments, suggests that the possibility of injury from the gun itself was not the Legislature's sole concern.

[5]In this case the State contends that defendant's fleeting contact with the flare gun when he threw it behind the seat constituted actual possession. While we need not decide that issue, it demonstrates the ease with which defendant could have assumed physical control of the weapon.

convertible to actual possession avoids the "bizarre" results feared by the Appellate Division. 186 *N.J.Super.* at 525. Under our holding today, a Graves Act sentence will be imposed only where defendant's ability to exercise actual control over the firearm is imminent.

## II.

The trial court imposed a Graves Act sentence on defendant based on its acceptance of the jury's answer to its special interrogatory. In so doing, the trial court failed to follow the procedure set forth in the Act. Subsection d provides:

d. The court shall not impose a mandatory sentence pursuant to subsection c. of this section, 2C:43–7c. or 2C:44–3d., unless the ground therefor has been *established at a hearing.* At the hearing, which may occur at the time of sentencing, the prosecutor shall establish by a preponderance of the evidence that the weapon used or possessed was a firearm. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information. [*N.J.S.A.* 2C:43–6 (emphasis added)].

Defendant urges an interpretation of this section that would require the sentencing court to find only whether the weapon at issue was a "firearm" within the meaning of the Graves Act. He contends that a ruling allowing the sentencing court to decide the question of use or possession in the face of jury verdicts of acquittal of weapons charges and armed robbery is fundamentally unfair. The history and purpose of the Graves Act do not support this narrow reading. The Legislature, in enacting the Graves Act, included in the list of offenses to which the Act applies some crimes for which possession or use of a firearm is not always a necessary element to be proved. *N.J.S.A.* 2C:11–3 (murder), 2C:11–4 (manslaughter), 2C:12–1(b) (aggravated assault), 2C:14–2(a) (sexual assault), 2C:14–3(a) (aggravated criminal sexual contact), 2C:15–1 (robbery), 2C:18–2 (burglary), 2C:29–5 (escape). In prosecutions for these crimes the jury will not necessarily consider the issue of firearm possession or use. We therefore interpret this section

as requiring the sentencing court to determine whether defendant used or possessed a weapon as well as whether that weapon is a firearm in all cases where Graves Act sentencing is required.

 This determination must be made by the judge, and be proven by a preponderance of the evidence. The jury's finding was an improper ground for applying the Graves Act. The basis for this determination parallels that which underlies the imposition of sentence under the discretionary sentencing provisions of the Criminal Code, *N.J.S.A.* 2C:44-1 *et seq.* In both proceedings, the court is free to consider all relevant material, not merely that admissible at trial or considered by the jury. *Williams v. New York,* 337 *U.S.* 241, 247, 69 *S.Ct.* 1079, 1083, 93 *L.Ed.* 1337 (1949); *State v. Marzolf,* 79 *N.J.* 167 (1979). By relying upon the jury's answer to the special interrogatory here, the court apparently foreclosed consideration of any information not before the jury. Also, under our decision today, the jury charge was incorrect in at least one respect, in that it included no element of imminent actual possession.

### III.

Defendant contends that the verdicts returned by the jury acquitting him of the armed robbery and possession offenses precluded a finding by the court that defendant possessed a weapon under the Graves Act. As he points out, taking the acquittal together with the special interrogatory and the court's instructions to the jury, there is no way of knowing whether the jury made factual findings sufficient to support application of the Graves Act.[6] According to defendant the fact that the

---

[6]According to our decision today, the Graves Act is implicated only when there is constructive possession of a firearm with the added element of *immediate availability.* But the trial court's definition of possession was broad enough to encompass any constructive possession. Thus, the jury's affirmative answer to the special interrogatory could have been based on the mere presence of the air rifles or the flare gun in the truck.

jury's answers do not unequivocally establish a finding of Graves Act possession leaves the court with no alternative but to conclude that the Graves Act does not apply. This argument cannot stand for two reasons.

■ First, under our decision today, the trial court is required to make an independent determination of whether defendant possessed a firearm within the meaning of the Graves. Act. That the jury's findings may have been insufficient to establish grounds for applying the Graves Act does not limit the court. Additional evidence taken at the hearing can provide support for the court's determination.

■ Second, the defendant is incorrect in suggesting that the jury's verdict and answers precluded a finding of possession and imposition of a Graves Act sentence. In this case, it is equally possible that the jury's findings of fact would be sufficient to warrant the court's application of the Graves Act. The jury's verdicts of acquittal are not irreconcilable with the finding of possession under the Graves Act.[7]

---

[7]It is unclear whether the jury, in acquitting defendant of the possession and armed robbery charges, believed that he had not possessed any weapon, or whether it found, for example, that defendant lacked the mental state required for a guilty verdict. The definition of possession for all but one of these offenses requires an additional element regarding the mental state of the defendant, which is absent in Graves Act possession.

And the verdict of acquittal on the charge of possession of a weapon under circumstances not manifestly appropriate for lawful use—the sole offense charged for which intent was not required, see State v. Lee, 96 N.J. 156 (1984)—was reached following an instruction that implied that intent was an element of the crime. Therefore, none of the jury's verdicts of acquittal necessarily reflects a finding that defendant did not possess the flare gun within the meaning of the Graves Act.

Because the two sets of findings are not irreconcilable, we are not faced with the question whether a court applying the Graves Act can make factual findings that conflict with those of the jury, and we express no opinion on this question. We note, however, that the jury's findings require proof beyond a reasonable doubt; the court's findings may be based on a preponderance of the evidence.

Thus, on remand, the jury's verdict will in no way restrict the court's discretion to make findings and decide whether *N.J.S.A.* 2C:43-6 mandates imposition of a parole ineligibility sentence on defendant.

## CONCLUSION

For the reasons stated, we modify the judgment of the Appellate Division. Defendant's sentence is vacated and the matter remanded to the trial court for resentencing after an appropriate Graves Act hearing.

HANDLER, J., concurring.

I dissented from this Court's decision in *State v. Des Marets*, 92 *N.J.* 62, 88 (1983), disagreeing with the Court's several rulings. One ruling related to whether the Graves Act, *N.J. S.A.* 2C:43-6c, repeals the sentencing provisions applicable to young adult offenders. I concluded that it did not. 92 *N.J.* at 92-100. That holding is not implicated in the present case. The Court in *Des Marets* also determined the nature of "possession" of a firearm for purposes of applying the Graves Act. The Court held "that simple possession of a weapon—that is a bare possession without any intent to use it—is covered by the Graves Act and triggers its mandatory sentencing provisions." 92 *N.J.* at 101. I disagreed with this interpretation.

My understanding of the Graves Act was that the general Code definition of "possession" under *N.J.S.A.* 2C:2-1c, adopted by the majority, was "never intended to define 'the *mens rea* or mental element with which the possession must take place to make possession criminal.'" *Id.* at 102 (quoting II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 39 (1971)). I determined that the Graves Act "focuses upon purposeful criminal action of a violent or threatening kind," *id.*, and that, in terms of the crimes covered, "the Legislature clearly tied the presence of a gun to the commission of the crime, * * * strongly sug-

gest[ing] that the involvement of the gun in the crime would be purposeful or intentional." *Id.* at 103. I concluded that "[t]he Act makes the best sense and achieves the greatest degree of cogency if it is construed to cover the purposeful possession of firearms with an intent to use them against persons in the course of committing a crime that itself causes or threatens actual or potential violence to individuals, or, is so possessed in the course of escaping from the commission of such crimes." *Id.* at 104.

There is a chasm between my view of "possession" under the Graves Act and that of the majority in *Des Marets.* I believed, in light of the extreme penal consequences of the Graves Act, that the defendant must be culpable in the sense of being guilty of an intentional, purposeful or wilful possession or use of a gun in connection with the underlying crime. The Court believed "that the Graves Act sanctions apply upon a showing of possession of a firearm, without any need to demonstrate intent to use * * *." *Id.,* 92 *N.J.* at 68. According to the Court, "[i]t is the mere presence of guns at the scene of crimes that this statute seeks to end." *Id.* at 70. In effect, the majority created a status offense under the Graves Act, mandating a three-year state prison term upon a status offender.

I am constrained to join the Court's opinion in this case. It is clearly dictated by its holding in *Des Marets,* which unmistakably eliminated intent as a constituent element of Graves Act possession. Further, the Court in *Des Marets* was aware of the Appellate Division opinion in the present case, *State v. Stewart,* 186 *N.J.Super.* 517, which I found persuasive in my dissenting opinion, urging, unsuccessfully, that it be followed by the Court. *Des Marets, supra,* 92 *N.J.* at 104–05. It is rather plain that the reasoning and result of the Appellate Division in this case, now expressly rejected by the Court, was also disapproved in *Des Marets.*

Finally, I subscribe to the Court's meticulous and circumscribed definition of possession in this case, albeit without the element of "intent." In this case the majority holds that

possession of a firearm for purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession. * * * Under our holding today, a Graves Act sentence will be imposed only where defendant's ability to exercise actual control over the firearm is imminent. [*Ante* at 604.]

As already noted, the Court in *Des Marets* opted to apply, for Graves Act purposes, the conventional interpretation of "possession," as defined by *N.J.S.A.* 2C:43–6c. In this case, it looks beyond traditional precedent to determine the meaning of "possession." It concludes that the "goal of the Graves Act is to remove guns from the scene of crimes. Any gun within easy reach of any participant in a criminal episode invites violence"; the "ability to exercise imminent control over the firearm" is substantially similar to "actual possession from the standpoint of danger." *Ante* at 604.

I agree with the majority, that, aside from the element of intent, possession must be an actual physical possession of the weapon, or the imminent and effective control of the weapon—control that can be transformed immediately into actual physical possession by the defendant. Possession must be a knowing one, and, it must be personal to the defendant. These requirements in some measure redress the elimination of intent from the definition of "possession." While the possessory offense under *Des Marets*, as defined by the Court, is still one applied essentially to a status offender, it is likely that in most cases that offender would also be culpable in the sense of having a criminal state of mind.

Accordingly, I concur in the judgment of the Court.

Justice SCHREIBER, who joined the dissent in *Des Marets*, joins in this concurring opinion.

*For modification and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed* —None.