STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
OLIVER WHITE, DEFENDANT-APPELLANT.

Argued October 9, 1984—Decided December 20, 1984.

*Matthew Astore,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph H. Rodriguez,* Public Defender, attorney; *Matthew Astore* and *Sheri Tanne,* Assistant Deputy Public Defender, on the briefs).

*Arlene R. Weiss,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Arlene R. Weiss* and *Allan J. Nodes,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

SCHREIBER, J.

■■ We granted defendant's petition for certification to consider when an accomplice to a crime may be subject to the sentencing requirements of the Graves Act, *N.J.S.A.* 2C:43–6c. 96 *N.J.* 287 (1984). We hold that if an accomplice is found guilty of an armed Graves Act offense that was committed with a firearm, he is subject to sentencing under that Act. If an accomplice is convicted only of an unarmed offense, but the trial court finds that the defendant nonetheless knew or had reason to know that his cohort would use or be in possession of a firearm in the course of committing or attempting to commit the crime, including the immediate flight therefrom, the accomplice is likewise subject to Graves Act penalties.

■ Defendant's convictions resulted from his participation in two separate robberies. The first occurred on June 7, 1981. The jury could reasonably have believed that defendant discussed and planned a robbery of a gas station with Stuart Anderson, Thomas Jones, and George Bland; that they drove to a point near the gas station; that Anderson gave Jones a gun in defendant's presence; and that Jones and Bland, holding the attendants at gunpoint, robbed the gas station. Thereafter all four shared in the proceeds.

The following day, the same four men and defendant's girl friend were together in the same automobile. Defendant had

told Anderson that Keith Norwood had money hidden in his sock. Anderson, using a gun, forced Norwood into the car. They drove for several blocks, stopped the car, and Anderson robbed Norwood.

Defendant was convicted of two conspiracies to commit armed robbery (*N.J.S.A.* 2C:5–2), three possessions of a handgun without a permit (*N.J.S.A.* 2C:39–5b), two armed robberies (*N.J.S.A.* 2C:15–1), three possessions of a weapon for an unlawful purpose (*N.J.S.A.* 2C:39–4a), and possession of a defaced weapon (*N.J.S.A.* 2C:39–3d). The trial court sentenced defendant on the armed robbery counts to two concurrent terms of fifteen years with five years of parole ineligibility. Three weapons possession convictions were merged into the armed robbery convictions and concurrent lesser sentences were imposed for all remaining convictions. The trial court recited, pursuant to Rule 3:21–4(e), that "[b]y reason of the application of the Graves Act the defendant must serve at least five years before he is eligible for parole." The court also observed that independent of the Graves Act it would have been "the Court's inclination" to impose the same sentence.

The Appellate Division affirmed. It explained that defendant's culpability as an accomplice was the same as that of the principal who possessed or used the gun and concluded that "[w]here, as here, the accomplice participates in the crime knowing that the principal is armed with a firearm, he 'used or was in possession of a firearm' within the meaning of [the Graves Act,] *N.J.S.A.* 2C:43–6c."

■ At the time of defendant's offenses the first paragraph of *N.J.S.A.* 2C:43–6c read as follows:

A person who has been convicted under 2C:39–4a. or of a crime under any of the following sections: 2C:11–3, 2C:11–4, 2C:12–1b., 2C:13–1, 2C:14–2a., 2C:14–3a., 2C:15–1, 2C:18–2, 2C:29–5, who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in 2C:39–1f., shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or 3 years,

whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole. [*L.*1981, *c.* 31, § 1.] [1]

Under this statute a person who has been convicted of robbery, *N.J.S.A.* 2C:15-1, and who, in the course of the robbery, "used or was in possession of a firearm" must receive a minimum term of imprisonment. Defendant contends that he was not personally armed at any time during the robberies or their aftermaths and that he is beyond the reach of the statute because of its clear, unambiguous language and purpose. Defendant urges that to hold otherwise would render the Graves Act constitutionally defective for failure to give him fair notice.

The Legislature in the Graves Act sought to deter the possession and use of firearms. In *State v. Des Marets*, 92 *N.J.* 62 (1983), the Chief Justice wrote:

> The intent of the Act is manifest: at the very least, to ensure incarceration for those who arm themselves before going forth to commit crimes. The Act is a direct response to a substantial increase in violent crime in New Jersey. The history of the legislation makes it clear that its focus is deterrence and only deterrence; rehabilitation plays no part in this legislation. The intended deterrence can be served only by giving effect to the obviously broad coverage of this law. [*Id.* at 68 (footnote omitted).]

In *Des Marets* the Court held that a showing of possession alone, without any intent to use the firearm, triggered the Act. *Id.* at 65. In *State v. Stewart*, 96 *N.J.* 596, 604 (1984), this Court stated that possession included "not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession."

We turn to discuss the role, if any, that the accomplice has within the scheme of the Graves Act. Under the New Jersey Code of Criminal Justice (Code), a person is guilty of an offense if it is committed "by the conduct of another person for which he is legally accountable * * *." *N.J.S.A.* 2C:2-6a. Legal

---

[1] In *L.*1982, *c.* 119, § 1, effective August 31, 1982, the phrase "of possession of a firearm with intent to use it against the person of another" was inserted after the reference to 2C:39-4a.

accountability exists when a person "is an accomplice of such other person in the commission of an offense." *N.J.S.A.* 2C:2-6b(3). The Code defines a person as the accomplice of another when:

[w]ith the purpose of promoting or facilitating the commission of *the* offense; he

(a) Solicits such other person to commit it;

(b) Aids or agrees or attempts to aid such other person in planning or committing it; or

(c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do.

[*N.J.S.A.* 2C:2-6c(1) (emphasis supplied).]

By definition an accomplice must be a person who acts with the *purpose* of promoting or facilitating the commission of *the* substantive offense for which he is charged as an accomplice. II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 57 (1971) observes that "one is 'legally accountable' for the conduct of another when he is an 'accomplice' of the other person 'in *the* offense.' By 'the offense' is meant that offense charged for which guilt is in question under § 2C:2-6a." [Emphasis in original.]

The Code defines purposely as follows:

A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist. 'With purpose,' 'designed,' 'with design,' or equivalent terms have the same meaning. [*N.J.S.A.* 2C:2-2b(1).]

For both the accomplice and his partner to be guilty, "it is essential that they shared in the intent which is the crime's basic element * * *." *State v. Fair*, 45 *N.J.* 77, 95 (1965). This Court in *Fair* said:

While each participant may be guilty 'as a principal,' N.J.S.A. 2A:85-14, he is not necessarily guilty in the same degree. If both parties enter into the commission of a crime with the same intent and purpose each is guilty to the same degree; but each may participate in the criminal act with a different intent. Each defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind. [*Ibid.*]

An accomplice may be guilty of armed robbery even though he did not personally possess or use the firearm in the course of the commission of the robbery. The accomplice has committed the same crime as the individual who possessed or used the gun if the accomplice had the purpose to promote or facilitate that crime, namely, robbery with the use of a firearm. *See N.J.S.A.* 2C:15–1b; *N.J.S.A.* 2C:2–6b; *State v. Gantt,* 195 *N.J.Super.* 114, 118 (App.Div.1984), certif. granted, —— *N.J.* —— (1985). One is the alter ego of the other.[2]

Surely, the Legislature intended that when an accomplice is guilty of a robbery that is held to be a crime of the first degree because one perpetrator used or possessed a firearm, the Graves Act would apply in sentencing the accomplice. If the Legislature had a contrary intent, it could have said so. *Cf. N.J.S.A.* 2C:11–3a(3) (defendant who had no reasonable ground to believe that any other participant was armed is not responsible for felony-murder committed by another). The Legislature created no exception from the Graves Act. Where an accomplice has been found guilty of armed robbery, he is subject to the minimum imprisonment terms of the Graves Act.

Therefore, it is critical to heed the precise crime of which the accomplice was adjudged guilty. In this respect the Code points out that:

An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the

---

[2]The Code continued the previously existing principle in *N.J.S.A.* 2A:85–14 that "any person who aids, abets, counsels, commands, induces or procures another to commit a crime is punishable as a principal." *N.J.S.A.* 2C:1–1e; II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 57 (1971). Accomplices were subject to enhanced punishment under *N.J.S.A.* 2A:151–5, which authorized an additional sentence for persons "armed with" or in possession of a weapon during the commission of certain crimes. *N.J.S.A.* 2A:151–5 was applied to the accomplice if the other offender was armed. *See State v. Richardson,* 73 *N.J.* 82 (1977); *State v. Jordan,* 113 *N.J.Super.* 563 (App.Div.), certif. denied, 58 *N.J.* 338 (1971).

offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted. [*N.J.S.A.* 2C:2-6f.]

It is possible for an accomplice to be guilty of robbery and for his compatriot to be guilty of armed robbery. *Cf. e.g., United States v. Sanborn,* 563 *F.*2d 488, 491 (1st Cir.1977) (to prove an accomplice guilty of aggravated robbery, the Government must show that the accomplice contemplated that a dangerous weapon would be used and shared in his principal's essential criminal intent); *Commonwealth v. Watson,* 388 *Mass.* 536, ——, —— n. 6, 447 *N.E.*2d 1182, 1187, 1187 n. 6 (1983) (to be guilty of armed robbery, an accomplice must know of the existence of a gun). *But see Commonwealth v. Yeager,* 599 *S.W.*2d 458, 459–60 (Ky.1980) (if accomplice intended to commit robbery, his "lack of intent of an aggravating circumstance, such as the use of a gun, will not act to lessen criminal liability for the higher degree of the same offense"); *State v. Davis,* 101 *Wash.*2d 654, 655, 660, 682 *P.*2d 883, 884, 886 (Wash.1984) (accomplice to robbery runs risk that it will "exceed the scope of the pre-planned illegality" and may be guilty of first degree robbery although he did not know his principal was armed). However, if the accomplice, though found guilty only of robbery, knew or had reason to know before the crime was committed that his partner would possess or use a firearm while the crime was being committed, or during the immediate flight thereafter, the trial court should apply the Graves Act. If the accomplice did not know or have reason to know beforehand that his partner would possess or use a firearm during those periods, then the Graves Act would be inapplicable. The deterrent effect—the *raison d'etre*—of the Graves Act is preserved.

To argue as defendant does that the Code must be strictly and literally interpreted conflicts with the mandate that the "provisions of the code shall be construed according to the fair import of their terms." *N.J.S.A.* 2C:1-2c. "[W]hen the language is susceptible of differing constructions it shall be interpreted to further * * * the special purposes of the particular

provision involved." *Ibid.; see State v. Maguire*, 84 *N.J.* 508, 514 n. 6 (1980) (where Code language susceptible of differing constructions, it is to be interpreted to further general purposes of the Code and special purposes of the particular provision). The Code enumerates seven general purposes governing sentencing; defendant relies upon one—fair warning of the nature of the sentence. He ignores others, such as insuring "the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection," *N.J.S.A.* 2C:1–2b(3), and preventing and condemning "the commission of offenses," *N.J.S.A.* 2C:1–2b(1). In light of the special objectives of the Graves Act, the general purposes of the sentencing procedures, the language of the Graves Act, and the pre-Code treatment of accomplices, we are of the opinion that our construction of the statute comports with the legislative intent.

Defendant also advances the argument that he did not have fair warning that the Graves Act would apply to his sentencing even though he was found guilty of armed robbery. We see no merit in this position. Defendant's conduct was unquestionably prohibited and it is difficult to conceive of how the statute trapped an innocent defendant by not providing fair warning.

In this case defendant was guilty of armed robbery and, as the Appellate Division observed, defendant does not dispute that "he was properly found guilty of armed robbery upon the State's proofs that he knew, and indeed planned, that each of the robberies would be effected with the use of the handgun."

The judgment of conviction is affirmed.

HANDLER, J., dissenting.

I do not believe that the Graves Act, *N.J.S.A.* 2C:43–6c, applies to an accomplice of an armed robbery who did not

himself possess or use the weapon involved in the crime. I therefore disagree with the Court's two-fold holding in this case. One of its rulings is that a convicted accomplice of an "armed Graves Act offense that was committed with a firearm" is subject to the Act. *Ante* at 126–127. The other ruling is that even an accomplice convicted "only of an unarmed offense" but who "knew or had reason to know that his cohort would use or be in possession of a firearm in the course of committing or attempting to commit the crime, including the immediate flight" must be given a mandatory custodial term under the Graves Act. *Ante* at 126.

In *State v. DesMarets*, 92 *N.J.* 62 (1983), this Court ruled "that simple possession of a weapon—that is a bare possession without any intent to use it—is covered by the Graves Act and triggers its mandatory sentencing provisions." *Id.* at 101. "[T]he Graves Act sanctions," according to the Court, "apply upon a showing of possession of a firearm, without any need to demonstrate intent to use . . . ." *Id.* at 68. In *State v. Stewart*, 96 *N.J.* 596 (1984), this Court ruled that "possession of a firearm for the purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession ." *Id.* at 604. Under these cases, a Graves Act offense for sentencing purposes clearly required the actual, immediate, and personal possession of the gun by the offender. The offense indisputably was deemed to be a possessory offense in which intent—state of mind of *mens rea*—was not relevant.

In this case, the Court goes well beyond these decisions. It now sanctions for Graves Act purposes a definition of possession that in no way requires the "ability to exercise imminent control over the firearm," *id.*, effectively retrenching upon its latest holding in *Stewart.* Further, it substitutes as a requirement "intent to use" for "actual possession," notwithstanding that "intent to use" had been "unmistakably eliminated ... as a constituent element of Graves Act possession,"

*Stewart, supra,* 96 *N.J.* at 609 (Handler, J., concurring), effectively reversing its holding in *DesMarets.* In so doing the Court in effect has strayed far from the statutory language of the Act itself, which enhances the sentence of a defendant who "used or was in possession of a fire arm." *N.J.S.A.* 2C:43–6c.

The root of the problem is that the Legislature simply did not deal with the sentencing consequences for accomplices or other non-possessory offenders under the Graves Act. By its provisions the statutory enactment dealt directly and only with those actually using and possessing a gun in the commission of the weapons offense. The Legislature, it would seem, reserved its new, severe, mandatory penal scheme for the actual, direct perpetrators of the weapons crime. Now, according to the Court, a Graves Act offense for sentencing purposes can be either a non-intentional possessory offense, under *DesMarets-Stewart,* or an intentional, non-possessory offense, as we say in this opinion.

Canons of judicial construction and deference to the legislative will do not lead us inexorably to the result reached by the Court today. We venture well beyond the accepted judicial role in construing this highly penal sentencing statute by divining a legislative intent that is neither expressed by the terms of the statute itself nor intrinsic to its acknowledged purpose. Though a part of the New Jersey Criminal Code, the Graves Act is a penal statute and still must be dominated by, if not subject to, the traditional principles of strict construction. *Neeld v. Giroux,* 24 *N.J.* 224, 229 (1957); *State v. Brenner,* 132 *N.J.L.* 607, 611 (E. & A. 1944). Thus, as a penal statute, the Graves Act's operative provisions cannot be extended by implication. *State v. Fair Lawn Service Center, Inc.,* 20 *N.J.* 468, 472 (1956); *Brenner, supra,* 132 *N.J.L.* at 611. The rule of strict construction is designed to narrow the scope of the conduct covered or the penalty applicable to such conduct, so as to avoid

both fundamental unfairness and the unfairness of arbitrary enforcement. *State v. Maguire*, 84 *N.J.* 508, 514 n. 6 (1980).

There is, moreover, nothing in the Code that would dictate a different understanding. The Legislature has prescribed standard rules of construction of all Code provisions. *N.J.S.A.* 2C:1–2c. Several of these standards apply directly to the sentencing provisions of the Code. They emphasize the objectives of discretionary, enlightened, fair and individualized sentencing, *e.g.*, *N.J.S.A.* 2C:1–2b(2), (4), (5), (6) and (7). The Legislature has not in any way intimated that these statutory principles of interpretation should not govern the sentencing provisions of the Graves Act.

These statutory provisions emphasize the importance of individualized sentencing. They are particularly relevant in instances where criminal guilt is predicated on notions of vicarious, constructive, or substituted responsibility, as is accomplice liability. *N.J.S.A.* 2C:2–6b(3). Even though criminal guilt may be affixed on grounds of criminal agency, and such guilt may be deemed the equivalent to that of one who is guilty as a principal, the penal consequences of such guilt—*sentencing* —must nonetheless remain an individualized matter.

The Court suggests that its interpretation of the Graves Act as applied to accomplices is parallel to the pre-Code sentencing scheme. It points out that under *N.J.S.A.* 2A:151–5, unarmed accomplices were subject to enhanced punishment if the principal offender was armed. *Ante* at 130 n. 2. The analogy, however, is inapposite. Enhanced punishment under that statute consisted of an additional sentence that could be imposed, but only in the sound discretion of the court. Unlike the Graves Act, as now interpreted by the Court, the judge was still required to consider the precise circumstances of the defendant's involvement in the crime, as well as all other factors relevant to sentencing, when deciding whether to impose an enhanced sentence upon one convicted as an accomplice.

It is therefore fundamentally unsound and unfair to impose upon an accomplice the identical penalty visited upon the principal if in fact the accomplice's underlying individual criminal acts do not merit the same punishment. *See Enmund v. Florida*, 458 *U.S.* 782, 102 *S.Ct.* 3368, 73 *L.Ed.*2d 1140 (1982). This is especially true of mandatory or automatic sentences that carry severe penal consequences.

Unless and until the Legislature indicates in clear statutory terms its purpose to sentence an accomplice under the mandatory provisions of the Graves Act, without regard to the defendant's personal possession and use of the gun involved in the crime, I would not presume to do so under the guise of executing the Legislature's will or effectuating its purpose.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, POLLOCK, O'HERN and GARIBALDI— 6.

*For reversal*—Justice HANDLER—1.