111 N.J. Super. 521 (1970)
269 A.2d 530
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSE MORALES, DEFENDANT-APPELLANT, AND LEON D. YATES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1970.
Decided October 6, 1970.
*523 Before Judges KILKENNY, HALPERN and LANE.
Mr. Myles Daitzman, Designated Attorney, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Alfred M. Bitting, Assistant Prosecutor, argued the cause for respondent (Mr. Dominick J. Ferrelli, Burlington County Prosecutor, attorney)
The opinion of the court was delivered by LANE, J.A.D.
Defendants were indicted for the manslaughter of Angelo Rye in violation of N.J.S.A. 2A:113-5. The jury found both defendants guilty. The matter is before the court on the appeal of Jose Morales.
The homicide occurred shortly after midnight on October 1, 1968 at Emily's Inn in Easthampton Township, Burlington County. Morales, a married man with seven children, was stationed at Fort Dix awaiting honorable discharge after 20 years of service in the United States Army. On September 30, 1968 after attending an R.C.A. Training School where he was learning to become a television repairman, he and a friend, Sergeant Reynolds, went to Emily's Inn looking for a mutual friend. They arrived at approximately 10 P.M. After having a few drinks, Morales played a game of pool with Rye, the deceased. Rye lost the game and became rather upset although there was no real disagreement between Morales and Rye. Immediately before the shooting Rye and a friend, Linda Markle, were sitting at the bar, as were Morales and Reynolds. The co-defendant, Leon D. Yates, was sitting between Miss Markle and Morales. Before September 30 Morales had never seen Rye, Markle or Yates. Rye got into a conversation with Yates about their respective terms in service. During the *524 course of this conversation Morales called Rye "chicken." Words were passed between Morales and Rye. Yates reached down and put a gun on the bar which he passed to Rye. Rye picked it up and then slid it back to Yates. The testimony is not clear as to exactly what happened after the gun was returned to Yates. There was testimony that Yates pushed the gun towards Morales and said to him, "Shoot that bastard." Morales picked up the gun, said something and the fatal shot was fired.
After the shooting Morales remained at the bar. Yates picked up the gun and walked out of the inn.
Morales testified as to the shooting that he had never seen a weapon like that in his life. He thought it was a toy gun and as he was handing it back to Yates, the gun went off. Subsequently the gun was retrieved by the police from a parking lot down the road from Emily's Inn where Yates had disposed of it.
Defendant argues that he was substantially prejudiced by an erroneous instruction given to the jury. In substance the alleged erroneous instruction was that it would be legally inconsistent for the jury to find Morales not guilty and to find Yates guilty. No objection was made at the time of the trial. He further argues that he suffered irreparable harm because the court in answer to an inquiry from the jury advised the jury that they might recommend leniency.
The thrust of the State's case was that Morales was guilty as the principal who actually committed the manslaughter and Yates was guilty of aiding and abetting. Under N.J.S.A. 2A:85-14 an aider and abettor is indicted as a principal. In his instructions to the jury which were somewhat confusing the trial court limited the jury's consideration of the charge against Yates to that of aider and abettor.
The court specifically charged the jury:
You may find that the defendant Yates was either guilty of manslaughter by reason of the statute known as the aiders and abettors statute, which I have explained to you, if your verdict of guilty is *525 returned as to Morales, but it would be legally inconsistent for you to find Morales not guilty and to find Yates guilty under the circumstances and under the thrust of the aiders and abettors statute. You should know further that you may find the defendant Yates not guilty of the charge of manslaughter even should you find the defendant Morales not guilty of manslaughter or if you find the defendant Morales guilty of manslaughter and you further find from your examination of the proofs that the acts and conduct of the defendant Yates did not prove his involvement under the aiders and abettors statute to the degree required to sustain a finding of guilt in that regard.
In his brief Morales appears to accept the theory of the case that factually Yates could be found guilty only on the theory of aiding and abetting. He argues, however, that the distinction between principals and aiders and abettors has been abolished and, therefore, the jury should not have been instructed that to find Yates guilty it had to find Morales guilty, citing State v. Cooper, 10 N.J. 532, 567 (1952); State v. Marshall, 97 N.J.L. 10 (Sup. Ct. 1922); United States v. Provenzano, 334 F.2d 678 (3 Cir.1964), cert. den. 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); Gray v. United States, 104 U.S. App. D.C. 153, 260 F.2d 483 (D.C. Cir.1958); United States v. Klass, 166 F.2d 373 (3 Cir.1948); State v. Cushing, 61 Nev. 132, 120 P.2d 208 (Sup. Ct. 1941).
These cases support the proposition that where a defendant is indicted and tried as a principal on the basis of his aiding and abetting another, the State must show that the alleged crime was committed but need not show by whom it was committed. "The proof must establish the commission of the offense by someone and the aiding and abetting by the defendant so charged." Roth v. United States, 339 F.2d 863 (10 Cir.1964).
Under the factual circumstances before the court, the charge insofar as aiding and abetting is concerned was not erroneous. The only way the State could prove that a crime had been committed was to prove Morales guilty. If in fact Morales was not guilty, Yates could not have been found guilty under the theory of his aiding and abetting the commission *526 of a crime. Shuttleworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); Edwards v. United States, 286 F.2d 681 (5 Cir.1960).
The charge, however, was deficient because it did not instruct the jury that they could find Yates guilty as a principal independent of aiding and abetting Morales.
Both Morales and Yates were indicted as principals. Either one could be convicted upon proof that he aided and abetted or upon proof that he was the principal actor. Cf. State v. Jacques, 99 N.J. Super. 230 (App. Div. 1968), aff'd 52 N.J. 481 (1968), cert. den. 395 U.S. 985, 89 S.Ct. 2138, 23 L.Ed. 774 (1969). There was sufficient evidence from which the jury could have concluded that Morales had committed an excusable homicide by virtue of accident or misadventure. N.J.S.A. 2A:113-6. There was also sufficient evidence from which the jury could have found Yates guilty as the principal actor in the manslaughter. A charge of involuntary manslaughter against Yates could have been supported on the theory of his careless and reckless use of the gun in question in a place where its accidental discharge could do injury. Cf. State v. Diamond, 16 N.J. Super. 26 (App. Div. 1951); State v. Reitze, 86 N.J.L. 407 (Sup. Ct. 1914); Charge to Grand Jury, 9 N.J.L.J. 167 (O. & T. 1886). From the evidence the jury could have concluded that the gun was fired while in Morales' hand by accident but that Yates had acted with criminal negligence. In such circumstance, Yates would be guilty as a principal actor, acting through the innocent Morales. Perkins, Criminal Law 569 (1957).
Where a defendant may be found guilty either as a principal actor or as an aider and abettor, the jury should be instructed as to both possibilities. State v. Jacques, 99 N.J. Super. 230, supra.
We hold that the failure to charge the jury that Yates could have been found guilty without Morales being found guilty was plain error. It substantially affected the rights of Morales and was of such a grievous nature to have a clear capacity to bring about an unjust result. State v. Gardner, *527 51 N.J. 444, 456 (1968). Its capacity for error is shown by the manner in which the jury rendered its verdict. The verdict as to Morales was:
This jury has reached a unanimous decision that Sergeant Morales is guilty of the charge of manslaughter, but also unanimously recommends leniency.
Whereas its verdict as to Yates was:
This jury has reached a unanimous verdict that Leon Daniel Yates is guilty of the charge of manslaughter, period.
The other point on appeal is that reversible error was committed when the court answered an inquiry from the jury as to whether it was possible for the jury to recommend leniency in the following manner:
By way of answer to you, the jury may recommend leniency, but you should know that the Court is not of necessity bound by the recommendation that the jury may make; that the function is intended to be the jury's primary obligation which is to determine the guilt or innocence and the sentence or punishment is an independent function which is not committed to the jury, but the jury may make such a recommendation if it feels so moved that the Court is not by reason of that recommendation restricted or bound by that recommendation. It is an independent function.
In State v. Overton, 85 N.J.L. 287 (E. & A. 1913), the jury in a murder case tried before the adoption of the statute allowing a recommendation for life imprisonment [N.J.S.A. 2A:113-4], returned its verdict of guilty of murder in the first degree "with a recommendation of defendant to the leniency of the court." The trial court ruled that the recommendation was surplusage and directed the jury to retire and to declare only whether defendant was guilty or not guilty of murder and if guilty whether in the first or second degree, omitting any recommendation. The Court of Errors and Appeals concurred with the view of the trial court "that the verdict as originally rendered was a good verdict of guilty in the first degree, and that the recommendation should be disregarded as surplusage." (at 296)
*528 The general rule is quite clear that in the absence of a statute allowing a recommendation, a recommendation by the jury for leniency is mere surplusage and does not vitiate the verdict. 53 Am. Jur., Trial, § 1061, p. 735; Annotations, "Recommendation of Mercy" 17 A.L.R. 1117, 1156 (1922); 87 A.L.R. 1362, 1370 (1933); 138 A.L.R. 1230, 1245 (1942).
The charge as to leniency was not reversible error. However, juries should not be instructed that they can make such recommendations. If inquiry is made by the jury, the judge should firmly charge that they have no right to make such a recommendation and that they should not be concerned with punishment (except, of course, in first degree murder prosecutions).
The judgment of conviction is reversed and the case remanded as to Morales.