263 N.J. Super. 620 (1993)
623 A.2d 800
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CRAIG WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1993.
Decided April 27, 1993.
*621 Before Judges COLEMAN, J.H., SHEBELL and CONLEY.
George W. Fisher argued the cause for appellant (Mason, Griffin & Pierson, attorneys; Mr. Fisher of counsel and on the brief).
*622 Arthur S. Safir, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey; Mr. Safir of counsel and on the letter brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The critical issue presented in this appeal is whether the owner of a car can be convicted as an accomplice of someone who burned the car at the request of the owner. We hold that the owner may be legally accountable for the conduct of the arsonist.
In a joint trial, defendant Craig Williams and co-defendant David DelGado were found guilty of certain criminal offenses associated with the burning of a 1988 black Nissan Maxima automobile owned by defendant Williams. Defendant was found guilty of second-degree aggravated arson, contrary to N.J.S.A. 2C:17-1a, as an accomplice under N.J.S.A. 2C:2-6 (Count III) and third-degree arson involving a barn, contrary to N.J.S.A. 2C:17-1b, (Count IV), also based on accomplice liability. Williams was acquitted of hiring someone to burn his car, conspiracy to burn his car and burning his car to collect insurance. The judge entered a judgment of acquittal on Count IV notwithstanding the verdict because there was no evidence that Williams wanted or even knew the barn would be burned. He was sentenced on Count III to a custodial term of four years; the judge stayed execution of the sentence pending this appeal.
In this appeal, defendant Williams raises the following contentions:
I. THE THIRD COUNT OF THE INDICTMENT ACCUSING DEFENDANT OF SETTING A FIRE FOR THE PURPOSE OF DESTROYING HIS OWN PROPERTY FAILED TO CHARGE CONDUCT CONSTITUTING THE OFFENSE OF AGGRAVATED ARSON; ACCORDINGLY, THE CONVICTION OF DEFENDANT FOR AGGRAVATED ARSON UNDER THAT COUNT CANNOT STAND.
II. THE CONVICTION OF DEFENDANT WILLIAMS FOR AGGRAVATED ARSON UNDER COUNT III OF THE INDICTMENT CANNOT BE SUSTAINED *623 ON THE THEORY THAT A LIEN ON THE AUTO DESTROYED BY FIRE MADE THE AUTO "PROPERTY OF ANOTHER" WITHIN THE INTENDMENT OF THE ARSON STATUTE SINCE SUCH A THEORY WAS NOT PRESENTED TO THE GRAND JURY, WAS NOT PLED IN THE INDICTMENT, AND WAS NOT CHARGED TO THE JURY.

I
The State's evidence presented to the jury disclosed that defendant-Williams owned a 1988 Nissan Maxima which was insured. He and co-defendant DelGado were New Jersey State Troopers in 1988 and were assigned to the Flemington barracks. Williams told DelGado that he was looking for someone to burn his Maxima. On September 24, 1988, DelGado contacted a good friend, William Starr,[1] and told him that he had a friend who wanted to "get rid of his car." Starr met with DelGado and Williams at DelGado's home. Starr discussed the matter with Williams, and Starr agreed to take the car to New York and burn it without removing any of its parts. Starr and Williams agreed upon a price of $300 for burning the car the next day. Williams agreed to drive the car to DelGado's house the next morning  September 25, 1988  and DelGado would call Starr. DelGado was to collect the $300 from Williams.
Williams dropped the car off at DelGado's home the morning of September 25, 1988 as planned and DelGado called Starr to pick up the car. Starr took Tommy McNamara with him to pick up the Maxima. Upon his arrival at DelGado's home, Starr found the Maxima parked out front. DelGado gave Starr the keys to the Maxima and Starr told DelGado that he would call him when the job was completed.
Starr and McNamara drove the Maxima to Englishtown where they did some shopping. When they returned from Englishtown, they began to strip the car and stored the parts in *624 a shed on McNamara's property. Once the stripping was terminated, McNamara decided that he did not wish to go with Starr to New York. That prompted Starr to pick up another friend, John Hoag, who in turn picked up Nelson DeJesus. Both Hoag and DeJesus were informed of Starr's plans and they were taken to McNamara's house. In their presence, Starr drove the Maxima toward the turnpike with Hoag and DeJesus following in Starr's car. However, Starr decided not to go to New York because the car looked too suspicious in its semi-stripped condition.
Starr drove the Maxima to a barn located at 4 Woodside Road, East Windsor Township, New Jersey where Starr, Hoag and DeJesus removed the tires, battery and remaining seats. They filled the car with some debris and threw a match into the car. The ensuing fire burned the car and the barn. The additional parts stripped from the car were taken to McNamara's house and placed in the same shed as the previous parts. Starr then notified DelGado that the job had been completed. A few days after the car was burned on September 25, 1988, DelGado gave Starr $200 for the job, stating that the money came from Williams.
The day after the fire, McNamara read in a newspaper that a car fitting the description of the one he saw Starr driving had been burned, he called Sergeant Robert Shainer of the Trenton Police Department.
A few days after September 26, 1988, Sergeant Charles Felter of the Criminal Investigation Bureau in the Trenton Police Department contacted McNamara and he agreed to cooperate in the arson investigation. In furtherance of that investigation, McNamara contacted Starr and told him he had a friend interested in buying the parts stripped from the Maxima. Starr agreed, but called DelGado before the meeting because Starr was suspicious that the meeting might be a "set-up." DelGado told Starr not to go, but he disregarded that advice. Starr and McNamara went to a prearranged meeting place together and *625 the "friend" arrived in a silver and black pickup truck. Starr memorized the Pennsylvania license plate number on the pickup.
After the meeting, Starr gave DelGado the pickup's license plate number DJB 889 and asked him to look it up in the computer. DelGado used the interstate computer to look up the license plate number but could not get any information as to the identity of the owner. DelGado informed Starr of this fact on October 13, 1988. In the meantime, Starr also decided to cooperate with law enforcement officials on October 12, 1988, when he was made aware that the arson investigation had uncovered his involvement. It turned out that McNamara's friend who was supposed to buy the Maxima's parts was Investigator Rossi of the Mercer County Prosecutor's Office. Starr testified as a key prosecution witness.

II
Williams contends that the allegations in Count III of the indictment failed to charge an offense of aggravated arson and the conviction on that count must be vacated. The essence of this contention is that because Williams could have burned his own car without committing aggravated arson, he could not be guilty of that offense as an accomplice.
Count III charged the following:
The Grand Jurors of the State of New Jersey, for the County of Mercer, upon their oaths present that WILLIAM STARR, NELSON DeJESUS, CRAIG WILLIAMS AND DAVID DELGADO on or about the 25th day of September, 1988, in the Township of East Windsor in the County aforesaid, and within the jurisdiction of this Court, did start a fire or cause an explosion of a 1988 black Nissan Maxima, VIN# JN1HU11P9JT612452, with the purpose of destroying a building or structure of Craig Williams, contrary to the provisions of N.J.S.A. 2C:17-1a; 2C:2-6, and against the peace of this State, the Government and dignity of the same. [Emphasis added].
It is agreed that the above count intended to charge aggravated arson pursuant to N.J.S.A. 2C:17-1a(2). This statute provides that:

*626 A person is guilty of aggravated arson, a crime of the second degree, if he starts a fire or causes an explosion, whether on his own property or another's:
(2) with the purpose of destroying a building or structure of another;
Thus it is plain that Count III when read in conjunction with the applicable statute, charged defendant Williams with accomplice liability for starting a fire in "a 1988 black Nissan Maxima ... with purpose of destroying a building or structure of Craig Williams...." The jury was instructed that the "structure here alleged in [Count III] is a black Nissan Maxima motor vehicle, that of Craig Williams." Starr testified that he purposely started the fire in the Maxima for the purpose of destroying the car.
N.J.S.A. 2C:17-1a(2) requires as an element of the offense that the "structure" burned be the property of another. The definition of "structure" contained in N.J.S.A. 2C:17-1e[2] simply refers to the burglary statute. That statute, N.J.S.A. 2C:18-1, defines "structure" to include a car or vehicle. Thus, the Maxima satisfied the requirement of a structure.
Next we must consider the meaning of "structure of another." N.J.S.A. 2C:17-1e states that "Property is that of another, for the purpose of this section, if any one other than the actor has a possessory or proprietary interest therein...." (Emphasis ours). Hence, the operative word is "actor." Under old European law, an actor was defined as one who "acted for another. The Scotch `doer' is the literal translation." Black's Law Dictionary (Rev. 4th ed. 1968). This person is sometimes referred to as the "principal actor." State v. Morales, 111 N.J. Super. 521, 526, 269 A.2d 530 (App.Div. 1970), certif. denied, 57 N.J. 433, 273 A.2d 60 (1971).
While the Code does not define "actor",[3] the Code mandates that its provisions "shall be construed according to the fair *627 import of their terms...." N.J.S.A. 2C:1-2c. This subsection further instructs that "when the language is susceptible of differing constructions it shall be interpreted to further ... the special purposes of the particular provision involved." Ibid.; see State v. White, 98 N.J. 122, 131-32, 484 A.2d 691 (1984); State v. Maguire, 84 N.J. 508, 514 n. 6, 423 A.2d 294 (1980). The special purpose of N.J.S.A. 2C:17-1a(2) is to prevent the purposeful burning of certain structures belonging to persons other than the arsonist.
Here, vicarious criminal liability is sought to be imposed upon defendant Williams on the theory that he is legally accountable for the conduct of Starr because he acted as an accomplice to Starr by soliciting Starr to burn the Maxima and by aiding, agreeing or attempting to aid Starr in burning the Maxima. Based on the language used in the accomplice liability statute, N.J.S.A. 2C:2-6, and the conduct proscribed therein, we are persuaded that the term "actor" is synonymous with the actual perpetrator of the crime rather than the accomplice. See State v. Bridges, 254 N.J. Super. 541, 565-66, 604 A.2d 131 (App.Div. 1992); State v. Morales, supra, 111 N.J. Super. at 526, 269 A.2d 530; N.J.S.A. 2C:2-3c. For present purposes, Starr was the "actor" and he had no possessory or proprietary interest in the Maxima which belonged to defendant Williams.
Defendant's reliance on State v. Boyd, 87 N.J.L. 560, 94 A. 807 (E. & A. 1915) for the proposition that he could lawfully burn his own car and that he could therefore solicit another person to burn his car without incurring any criminal liability is misplaced. In Boyd the indictment failed to charge that the destruction, which defendant was accused of encouraging others to commit, was unlawful. Id. at 569, 94 A. 807. The case was decided based upon the insufficiency of the allegations in the indictment which were fatal. Only in dictum did the court observe that it may have been lawful for a person to burn his personal property in 1915 because the statute there involved, which was an inciting to riot or destroy property and not an *628 arson statute, required the act to which one incites to in itself be unlawful.
Boyd did not involve common law or statutory arson. As early as 1846, the arson statutes prohibited an owner from burning one's own building or dwelling, State v. Midgeley, 15 N.J. 574, 576-77, 105 A.2d 844 (1954), even if the building was unoccupied after the 1919 amendment to the Crimes Act by L. 1919, c. 106, § 1, p. 257. See N.J.S.A. 2A:89-1, repealed by N.J.S.A. 2C:98-2. Thus it is clear that the legislature is free to decide what constitutes arson and whether burning of one's own property or soliciting others to burn the property violates the legislative enactment.
Indeed, when the New Jersey Code of Criminal Justice (Code) became effective September 1, 1979, one of the existing arson statutes prohibited an owner of a motor vehicle or his agent from maliciously or willfully burning or setting fire with intent to burn a "vehicle, motor vehicle or aircraft, whether it be his own or that of another...." N.J.S.A. 2A:89-2b, repealed by N.J.S.A. 2C:98-2. The high misdemeanor described in N.J.S.A. 2A:89-2 was separate and apart from the crime of setting fire to or burning a motor vehicle or other property to collect insurance proscribed in N.J.S.A. 2A:89-3, now repealed by N.J.S.A. 2C:98-2. Consequently, we find no basis in our law at the time the Code was enacted to support the assertion that defendant Williams could lawfully burn his car.
To be sure, N.J.S.A. 2C:17-1a(2) proscribes the starting of a fire in any property in which the actor has neither a possessory nor a proprietary interest for the purpose of destroying a building or structure of another. "We deem it clear that the Legislature intended to punish separately the act of starting a fire" in a car not owned by the actor. State v. Allison, 208 N.J. Super. 9, 25, 504 A.2d 1184 (App.Div. 1985).[4] Although the *629 statutory language of N.J.S.A. 2C:17-1 and the Final Report of the New Jersey Criminal Law Revision Commission, Volume II: Commentary (Commentary), p. 205 (1971) seem to suggest that the owner of a motor vehicle in some circumstances may be able to lawfully burn his or her own motor vehicle, we need not decide that issue because defendant was tried and convicted under Count III as an accomplice of Starr on the theory that he was legally accountable for the conduct of Starr. Even if the Legislature did not prohibit the owner of a car from burning his or her own car, it was free to prohibit the owner from soliciting or aiding another in burning the car. By way of analogy, committing suicide or maiming one's self may not be a crime, but one who aids or assists one to commit suicide becomes criminally liable under N.J.S.A. 2C:11-6. See also N.J.S.A. 2C:2-10b(2). Hence, Count III properly charged defendant Williams with accomplice liability since that count charged Starr with the offense of second-degree arson. See State v. Lustig, 13 N.J. Super. 149, 153, 80 A.2d 309 (App.Div. 1951).

III
We also reject defendant Williams contention that he could not be criminally liable for Starr's conduct. The Code adopted a unilateral approach to accomplice liability. See N.J.S.A. 2C:2-6f. Cf. State v. Del Fino, 100 N.J. 154, 160, 495 A.2d 60 (1985); State v. Conway, 193 N.J. Super. 133, 158-160, 472 A.2d 588 (App.Div.), certif. denied, 97 N.J. 650, 483 A.2d 174 (1984). Even before enactment of the Code, one who is legally incapable of committing an offense may be found guilty as an aider or abettor of the actor. Commentary, p. 59; State v. Bryant, 257 N.J. Super. 63, 67-69, 607 A.2d 1343 (App.Div. 1992) and cases collected therein. N.J.S.A. 2C:2-6d codifies *630 pre-existing law in New Jersey. Id. at 67, 607 A.2d 1343. Subsection 6d provides:
A person who is legally incapable of committing a particular offense himself may be guilty thereof if it is committed by another person for whose conduct he is legally accountable, unless such liability is inconsistent with the purpose of the provision establishing his incapacity.
We perceive no sound reason under the Code or the public policy of this State not to apply N.J.S.A. 2C:2-6d to this case. Pre-Code law prohibited the owner of a car from burning his or her own car or aiding or abetting another in burning the car. N.J.S.A. 2C:1-1e instructs that "provisions of the Code not inconsistent with those of prior laws shall be construed as a continuation of such laws." According to the State's evidence, the motive for burning the car was clearly unlawful.
Additionally, the pertinent subsections of N.J.S.A. 2C:2-6 provide that a person is guilty of an offense if the offense is committed by his or her own conduct or by the conduct of another person when he or she is an accomplice of such other person in the commission of that offense. N.J.S.A. 2C:2-6a and 6b(3). An accomplice of another, as is pertinent to this case, is defined to be a person who with "the purpose of promoting or facilitating the commission of the offense, ... [s]olicits such other person to commit it; [a]ids or agrees or attempts to aid such other person in planning or committing [the offense]." N.J.S.A. 2C:2-6c(1)(a) and (b). State v. Kamienski, 254 N.J. Super. 75, 95, 603 A.2d 78 (App.Div.), certif. denied, 130 N.J. 18, 611 A.2d 656 (1992). By "the offense" is meant the offense charged in the indictment "for which guilt is in question under § 2C:2-6a." The Commentary, supra, at 57. See State v. White, 98 N.J. 122, 129, 484 A.2d 691 (1984).
Thus, under the Code, defendant Williams was legally accountable for the conduct of Starr if Williams either purposely solicited Starr to commit the crime of aggravated arson or if Williams aided or attempted to aid Starr in planning or committing the offense of aggravated arson. Williams acted purposely if it was his "conscious object to engage in conduct of that *631 nature or to cause such a result." N.J.S.A. 2C:2-2b(1). Under prior law, "[a]ny person who willfully causes another to commit a crime, ... [or who] procures another to commit a crime is punishable as a principal," N.J.S.A. 2A:85-14. Even though this statute was repealed, the principle has been continued under the Code. State v. White, supra, 98 N.J. at 130, n. 2, 484 A.2d 691.
We are entirely satisfied that under the State's version of the evidence, see State v. Christener, 71 N.J. 55, 66, 362 A.2d 1153 (1976), Williams procured and solicited Starr through DelGado to burn the car. A careful reading of the accomplice liability statute as a whole evinces a careful legislative judgment to visit criminal liability upon an accomplice who purposely solicits, procures or aids another in the planning or commission of an offense by the perpetrator. See State v. Weeks, 107 N.J. 396, 402, 526 A.2d 1077 (1987). Congruent criminal liability is visited upon the accomplice for purposely procuring, soliciting or aiding the perpetrator. The Commentary supra, at 59, refers to these as some of the exhaustive descriptions of "the ways in which one may purposely enhance the probability that another will commit a crime." Our careful study of the law and the appellate record convinces us that defendant Williams was properly convicted under Count III.

IV
In view of our decision that defendant Williams was properly convicted under Count III, it is not necessary to reach the contention under Point II that defendant could not be convicted under Count III based on a lienholder's interest in the car. Suffice it to say that we fully agree that because neither the Grand Jury nor the trial jury was ever informed or asked to consider the lienholder's interest as the property of another, and because the indictment does not refer to any lienholder's interest, defendant could not be convicted based on that theory. See State v. Wein, 80 N.J. 491, 404 A.2d 302 (1979). See also *632 N.J.S.A. 2C:20-1h; State v. Altenburg, 223 N.J. Super. 289, 297, 538 A.2d 822 (App.Div.), aff'd 113 N.J. 508, 551 A.2d 534 (1988); State v. Pescatore, 213 N.J. Super. 22, 29, 516 A.2d 261 (App.Div. 1986), aff'd o.b. 105 N.J. 441, 522 A.2d 440 (1987).
The judgment of conviction under Count III is affirmed.
NOTES
[1] Starr was convicted of certain offenses based on his guilty plea. We have this day affirmed DelGado's convictions in a separate opinion.
[2] Effective January 18, 1992, N.J.S.A. 2C:17-1e was redesignated as N.J.S.A. 2C:17-1f under L. 1991, c. 498, § 1.
[3] But see N.J.S.A. 2C:1-14e, f and g.
[4] This opinion should not be interpreted as precluding a proper use of fire or explosions to lawfully demolish a structure or building. See N.J.S.A. 2C:3-1; N.J.S.A. 2C:3-2 and N.J.S.A. 2C:3-10 which render certain conduct in some circumstances noncriminal. See also N.J.S.A. 2C:2-11. Neither of these statutes has been implicated in this case.