**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3167-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RALPH M. LEMAR,

     Defendant-Appellant.

_____

Argued March 12, 2019 – Decided April 9, 2019

Before Judges Hoffman, Suter and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-08-2401.

Stefan Van Jura, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Linda A. Shashoua, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ralph M. Lemar appeals his conviction and sentence for armed robbery and related offenses. Defendant makes several claims of error that were not raised at trial. Defendant also contends his conviction is against the weight of the evidence even though he did not move for a new trial. Finally, defendant argues his sentence is excessive. We affirm.

I

Defendant was tried with co-defendants Brian K. Williams, Marvela S. Brown-Bailey, and Innis J. Henderson. We summarize the evidence adduced at the joint trial.

On the afternoon of March 25, 2015, Brown-Bailey, a licensed bail bondsman, traveled to the residence of Katie Wilson. Brown-Bailey enlisted Wilson's help in apprehending Eric Webb, who was wanted for failing to appear at a court hearing. Wilson was a former associate of Webb's. Wilson admitted she and Webb participated in a car rental scheme whereby Wilson rented cars in her name for Webb to drive because Webb did not have a license; she also admitted to purchasing heroin from Webb.

Brown-Bailey asked Wilson if she would be willing to set up a meeting with Webb so Brown-Bailey could apprehend him. Wilson agreed. In exchange,

A-3167-16T2

Brown-Bailey gave her $100, and promised her assistance with her "municipal problems," which included a pending charge related to the car rental scheme.

Wilson contacted Webb and arranged for him to come to her residence that night. When Webb pulled up, Wilson sent Brown-Bailey a text message, and, within moments, "a couple of cars pulled up. One pulled from the front to block [Webb] in and another came from the back so his car wasn't able to move." Wilson testified she was "pretty sure" Brown-Bailey's red Dodge Avenger was in the back and a white Chevrolet Impala associated with defendant was in the front. Wilson testified she observed four people exit the Dodge and the Impala. By that time, it was dark outside so Wilson could only positively identify Brown-Bailey and Henderson, but she was certain the other two were black men. Wilson testified they all yelled at Webb to get out of the car. In response, F.E., Webb's seventeen-year-old passenger, emerged from the car, but Webb did not. Instead, Webb drove his car back and forth, hitting the vehicles blocking him so he could get away.

Webb then fled in his silver Chevrolet Malibu. Defendant, Williams, and co-defendant Jovani A. Diaz pursued Webb as he fled.[1] Diaz testified she was

---

[1] Diaz was charged with the same offenses as defendant and Williams, but entered into a plea agreement prior to trial, pleading guilty to second-degree conspiracy to commit robbery.

driving the Impala, which belonged to the mother of one of defendant's children, during the high-speed pursuit, which eventually terminated in a wooded area behind a motel in Atco. Diaz also testified Webb was unable to exit his car via the driver's side door because she stopped the Impala alongside the Malibu. Diaz admitted Webb "was trying to get out. He was coming from the driver's side leaning over to the passenger's side trying to get out the car." Webb testified it was at that point defendant opened the passenger's side door, jumped in, and hit him in the head with a tire iron. Diaz's testimony corroborated Webb's – she stated she witnessed defendant hit Webb in the face with the tire iron. Webb stated he received seven stitches in his forehead as a result of defendant striking him with the tire iron.

Webb testified another male "jumped on" him from the back and began punching him in the ribs. Webb could not positively identify Williams as the other male, however, Diaz testified she witnessed Williams "punching on" Webb. Diaz also testified defendant and Williams were both "beating on" Webb. Webb also testified a woman "attacked [him] from the driver's side," and restrained his legs. Although Webb could not identify the woman, Diaz admitted to holding Webb's legs and to "hitting" him."

A-3167-16T2

Webb testified defendant took his sunglasses and necklace, and stated, "You don't need this. You goin' to jail." Webb also stated the woman removed money from his pockets after being ordered to do so by defendant. Diaz admitted to taking Webb's cell phone and cash. Webb's cell phone was recovered from Diaz's belongings after her arrest.

On the date he testified, Webb was serving two prison terms, one for fourth-degree aggravated assault, and the other for charges stemming from the heroin he was in possession of when the police searched him on the night of the incident. Webb also testified to his prior convictions for burglary, resisting arrest, and drug offenses; admitted he knew he had an arrest warrant out for him for violating his probation, and for failing to appear for a court date while out on bail on firearms charges; and admitted he had not made the required payments to the bail bondsman.

Officers Michael Hackman and Timothy Arthur Lyons of the Waterford Township Police Department both testified they observed blood in the front passenger side area of Webb's car and a tire iron on the front passenger's seat of the Impala. Officer Lyons also testified only Webb appeared injured. The scientific testimony elicited at trial established the clothing worn by defendant and Williams had Webb's blood on it.

A-3167-16T2

Brown-Bailey told police defendant helped her catch bail jumpers "every now and then." She testified defendant occasionally accompanied her when she went in search of bail jumpers to ensure her safety. According to Brown-Bailey, it was defendant who enlisted the help of Williams, Henderson, and Diaz, who was Henderson's then girlfriend.

A Grand Jury returned an indictment charging defendant, Williams, and Diaz with first-degree robbery, N.J.S.A. 2C:15-l(a)(1) and (2) (count one); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(1) and (2) (count two); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count three); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count four); third-degree possession of a weapon, specifically a tire iron, for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count five); and fourth-degree unlawful possession of a weapon (the tire iron), N.J.S.A. 2C:39-5(d) (count six). Henderson and Brown-Bailey were charged under the same indictment with kidnapping, robbery, and other related offenses for the events that transpired with F.E. after he exited Webb's vehicle.

Tried to a jury, defendant was convicted of counts one, two, four, five, and six as charged. On count three, the jury convicted defendant of the lesser-included offense of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7),

6

while Williams was convicted of the lesser-included charge of simple assault, N.J.S.A. 2C:12-1(a)(1). Henderson and Brown-Bailey were convicted of the lesser-included charges of false imprisonment, conspiracy to commit false imprisonment, and theft; Henderson was also convicted of related weapons offenses.

After merging counts two, three (as amended), four, and five into count one for sentencing purposes, defendant was sentenced to a seventeen-year prison term, subject to an eighty-five percent period of parole ineligibility and five years of parole supervision, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. On count six, defendant was sentenced to a concurrent eighteen-month prison term. This appeal followed.

Defendant raises the following arguments:

POINT I
THE TRIAL COURT'S INSTRUCTION AS TO ACCOMPLICE LIABILITY WAS ERRONEOUS AND NECESSARILY PREJUDICIAL. U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 10. (Not Raised Below).

POINT II
THE TRIAL COURT ERRED IN FAILING TO SUA SPONTE ORDER SEVERANCE OF THE TRIAL AS TO DEFENDANT LEMAR. U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 10. (Not Raised Below).

POINT III

THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT, NECESSITATING REVERSAL. U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 10. (Not Raised Below).

    A. Diminution of the State's Burden of Proof.

    B. Misstatement of Law as to Accomplice Liability.

    C. Vouching for State's Witness.

    D. Misstatement of the Law of Conspiracy.

    E. Conclusion.

POINT IV

THE CONVICTIONS WERE AGAINST THE WEIGHT OF THE CREDIBLE EVIDENCE, NECESSITATING REVERSAL. U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 10. (Not Raised Below).

POINT V

THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.

II.

For the first time on appeal, defendant argues the trial court's accomplice liability charge misstated the basis for conviction. He asserts the error warrants reversal of his convictions for robbery and aggravated assault. We are unpersuaded by this argument because the jury's verdict demonstrates there was no prejudice.

8

"Whether a defendant is being prosecuted as a principal or an accomplice, 'the State must prove that he possessed the mental state necessary to commit the offense.'" State v. Maloney, 216 N.J. 91, 105 (2013) (quoting State v. Whitaker, 200 N.J. 444, 458 (2009)). "By definition an accomplice must be a person who acts with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice." State v. Bielkiewicz, 267 N.J. Super. 520, 527-28 (App. Div. 1993) (quoting State v. White, 98 N.J. 122, 129 (1984)). "An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal." Whitaker, 200 N.J. at 458 (citing White, 98 N.J. at 129). "[A]n accomplice who does not share the same intent or purpose as the principal may be guilty of a lesser or different crime than the principal." Id. at 458-59 (citing Bielkiewicz, 267 N.J. Super. at 528). "Thus, one defendant may be 'guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind.'" Id. at 458 (quoting White, 98 N.J. at 129).

Normally, when "a defendant fails to object to a trial court's instructions, the failure to challenge the jury charge is considered a waiver to object to the instruction on appeal." Maloney, 216 N.J. at 104 (citing R. 1:7-2; State v.

Torres, 183 N.J. 554, 564 (2005)). Nevertheless, "[b]ecause proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

When the State proceeds on a theory "that a defendant acted as an accomplice, the trial court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability." Maloney, 216 N.J. at 105 (quoting Bielkiewicz, 267 N.J. Super. at 527). If "lesser[-]included offenses are submitted to the jury, the court has an obligation to 'carefully impart[] to the jury the distinctions between the specific intent required for the grades of the offense.'" Id. at 106 (alterations in original) (quoting Bielkiewicz, 267 N.J. Super. at 528). Nonetheless, an error may still be excused if it is clear it was "harmless beyond a reasonable doubt." Maloney, 216 N.J. at 105 (quoting State v. Collier, 90 N.J. 117, 123 (1982)).

We must first determine if the court erred, and if it did, whether the failure "was clearly capable of producing an unjust result such that a reasonable doubt is raised as to whether the error led the jury to a result it otherwise might not have reached." State v. Jenkins, 178 N.J. 347, 360-61 (2004) (quoting State v.

10

Brims, 168 N.J. 297, 306 (2001)).  In making that determination, our task is to review the jury charge as a whole:

> In passing upon the propriety of a trial court's instruction, this court will examine the entire charge to see whether the jury was misinformed as to the controlling law.  It is ordinarily impossible for the trial court to state all of the applicable law in one sentence.  The test, therefore, is whether the charge in its entirety was ambiguous or misleading.
>
> [State v. R.B., 183 N.J. 308, 324 (2005) (quoting State v. Hipplewith, 33 N.J. 300, 317 (1960)).]

Defendant claims the trial court instructed the jury he could be guilty of a lesser-included offense only if Williams were also guilty of the lesser offense, negating the principle that a defendant can be guilty as an accomplice only to the extent of his own specific intent, and therefore can be guilty as an accomplice of a different crime than the principal.  Although the portion of the trial court's instruction to which defendant now objects deviated from the then-applicable Model Jury Charge pertaining to accomplice liability and lesser-included offenses, when reading the charge as a whole, we conclude the charge was not error in light of the multiple theories advanced by the State.  In addition, the trial court repeatedly instructed the jury it had to consider each defendant's state of mind and assess each defendant's guilt independently.

Even if we were to consider the small portion of the charge to which defendant objects to be a misstatement of the law, in light of the jury's verdict, we are convinced it was "harmless beyond a reasonable doubt." On count three, defendant was convicted of the lesser included-offense of third-degree aggravated assault and Williams was convicted of the lesser-included disorderly persons offense of simple assault. Thus, on the only count the jury convicted both defendant and Williams, it convicted Williams of a lesser offense than defendant. If defendant's assertion was correct, the jury would not have convicted defendant of a more serious offense than Williams. The jury charge did not cause the unjust result defendant alleges.

## III.

For the first time on appeal, defendant argues the defenses raised by co-defendants Williams and Brown-Bailey were designed to paint him as the sole bad actor, which was so prejudicial that the trial court should have sua sponte ordered severance, affording him a separate trial. Defendant claims joinder is unmistakably prejudicial when each defendant claims that the other committed the criminal act. We are unpersuaded by this argument.

"Two or more defendants may be charged and tried jointly 'if they are alleged to have participated in the same act or transaction' constituting the

offense." State v. Weaver, 219 N.J. 131, 148 (2014) (quoting R. 3:7-1 (indictment); R. 3:15-1 (trial)). Trying codefendants jointly is generally preferred, "particularly when 'much of the same evidence is needed to prosecute each defendant.'" State v. Brown, 170 N.J. 138, 160 (2001) (quoting State v. Brown, 118 N.J. 595, 605 (1990)). "Indeed, under those circumstances, a joint trial is 'preferable' because it serves judicial economy, avoids inconsistent verdicts, and allows for a 'more accurate assessment of relative culpability.'" Weaver, 219 N.J. at 148 (quoting Brown, 118 N.J. at 605).

Generally, a defendant is required to make any motion to sever the charges before trial. R. 3:15-2(c); R. 3:10-2. When "considering a motion for severance, the trial court should 'balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency.'" Brown, 118 N.J. at 605 (quoting State v. Coleman, 46 N.J. 16, 24 (1965)). "The decision whether to grant severance rests within the trial court's sound discretion and is entitled to great deference on appeal." Id. at 603-04 (citing State v. Laws, 50 N.J. 159, 175 (1967); State v. Sanchez, 224 N.J. Super. 231, 245 (App. Div. 1988)). If a defendant fails to move for severance he must show plain error by making "a strong showing of probable prejudice in fact." State v. Keely, 153 N.J. Super. 18, 22-23 (App. Div. 1977) (quoting State v. Baker, 49 N.J. 103, 105 (1967)).

Defendant argues severance was required because the theory of Williams's and Brown-Bailey's[2] defenses were that any offenses against Webb were committed by defendant. We disagree.

"The test for granting severance . . . is a rigorous one." Brown, 170 N.J. at 160 (alteration in original) (quoting Brown, 118 N.J. at 605-06). "Separate trials are required only when defendants 'present defenses that are antagonistic at their core,'" and defenses are antagonistic at their core only if they are mutually exclusive. Brown, 118 N.J. at 606 (quoting United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir.1981)). "The mere existence of hostility, conflict, or antagonism between defendants is not enough." Ibid. Defenses are only mutually exclusive if they limit "the jury's universe of choices" such that it can believe only one defendant or the other. Ibid. "The prosecutor's theory of the case, and the defenses themselves, must force the jury to choose between the defendants' conflicting accounts and to find only one defendant guilty." Ibid. "If the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely, the defenses are not mutually exclusive." Ibid. "The

---

[2] As defendant acknowledges, Brown-Bailey was not charged with any of the same offenses as defendant. Their respective charges related to different victims.

fact that one defendant seeks to escape conviction by placing guilt on his or her co-defendant has not been considered sufficient grounds for severance." State v. Johnson, 274 N.J. Super. 137, 151 (App. Div. 1994) (quoting Brown, 118 N.J. at 606). "Finally, and perhaps most importantly, a defendant does not have a right to severance simply because the defendant believes that a separate trial 'would offer defendant a better chance of acquittal.'" Ibid. (quoting State v. Morales, 138 N.J. Super. 225, 231 (App. Div. 1975)).

Neither the State's theory of the case nor defendant's and Williams's defenses forced the jury to choose between their conflicting accounts and find only one or the other guilty. In fact, only convicting defendant or Williams is the opposite of what the State sought – the State argued both the existence of a conspiracy and that defendant and Williams were accomplices because it sought to convict both. The jury was not presented with an all or nothing proposition of convicting defendant or Williams, and the fact that Williams sought to place the blame on defendant does not give rise to mutually exclusive defenses. We conclude defendant was properly tried with his co-defendants.

IV.

Defendant challenges statements made by the prosecution during summation. "Because he failed to object at trial, we review the challenged

15

comments for plain error." State v. Pressley, 232 N.J. 587, 593 (2018). "To warrant reversal on appeal, the prosecutor's misconduct must be 'clearly and unmistakably improper' and 'so egregious' that it deprived defendant of the 'right to have a jury fairly evaluate the merits of his defense.'" Id. at 593-94 (quoting State v. Wakefield, 190 N.J. 397, 437-38 (2007)).

"Prosecutors are expected to make a vigorous and forceful closing argument to the jury, and are afforded considerable leeway in that endeavor." State v. Ingram, 196 N.J. 23, 43 (2008) (quoting State v. Jenewicz, 193 N.J. 440, 471 (2008)). Prosecutorial comments violate a "defendant's right to a fair trial when they 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" State v. Jackson, 211 N.J. 394, 409 (2012) (alteration in original) (quoting State v. Koedatich, 112 N.J. 225, 338 (1988)).

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Echols, 199 N.J. 344, 360 (2009) (quoting State v.Timmendequas, 161 N.J. 515, 576 (1999)).

Defendant argues the prosecutor's statements regarding the meaning of reasonable doubt were a clear misstatement of the law necessitating reversal.

While a prosecutor should not misstate the law, State v. Frost, 158 N.J. 76, 85 (1999), defendant has not demonstrated reversible error.

Defendant's reliance on State v. Whitaker, 402 N.J. Super. 495 (App. Div. 2008), aff'd, 200 N.J. 444 (2009), is misplaced. In Whitaker, we vacated the defendant's conviction and remanded for a new trial because the trial court "bolstered" the prosecutor's misstatement of the law during summation when it provided no "curative or limiting instructions." Id. at 515. Here, however, the trial court administered an appropriate charge as to reasonable doubt. "We presume the jury faithfully followed that instruction . . . ." State v. Miller, 205 N.J. 109, 126 (2011). We conclude the prosecutor's comment was not clearly capable of producing an unjust result.

Defendant also takes issue with the prosecutor's "overly simplistic rendering of the principle" of accomplice liability. Defendant's argument fails for the same reason his claim regarding the jury charge on accomplice liability failed – because the argument is belied by the jury's verdict. Since defendant cannot show he was prejudiced, he cannot demonstrate plain error.

Defendant also argues the prosecutor improperly "bolstered" Diaz's credibility. Defendant points to two closely related statements made by the prosecutor that he argues were meant to convince the jury Diaz should be

believed defendant told her to "run the pockets" of Webb. First, the prosecutor asked the jury the following rhetorical question: "Why wouldn't she be saying [']I picked it up out of the car['] if that's what happened?" Second, the prosecutor responded to his rhetorical question with the statement: "Now again, I would also say that by her body language and her mannerism, you know she's telling the truth." Defendant argues the prosecutor's summation warrants reversal because she improperly voiced a personal opinion based on body language and mannerism. We disagree.

Defense counsel attacked Diaz's credibility during summation. "A prosecutor is permitted to respond to an argument raised by the defense so long as it does not constitute a foray beyond the evidence adduced at trial." State v. Patterson, 435 N.J. Super. 498, 510-11 (App. Div. 2014) (quoting State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001)). The prosecutor's comment on the witness's credibility was responsive to defense counsel's argument. Moreover, the prosecutor did not "personally vouch for the witness or refer to matters outside the record as support for the witness's credibility." State v. Walden, 370 N.J. Super. 549, 560 (App. Div. 2004) (citing State v. Scherzer, 301 N.J. Super. 363, 445 (App. Div. 1997)). Her comment was based on

observable physical characteristics of the witness. The comment was isolated and did not exceed fair comment on the evidence revealed at trial.

In addition, the trial court "clearly instructed the jury that the remarks made by the attorneys in their summations were not evidence, but argument." State v. Smith, 212 N.J. 365, 409 (2012). The trial court instructed the jury: "Arguments, statements, remarks, openings and summations of counsel are not evidence, and must not be treated as evidence. Although the attorneys may point out what they think important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial." "We presume the jury followed the court's instructions." Smith, 212 N.J. at 409 (citing State v. Loftin, 146 N.J. 295, 390 (1996)).

Defendant further argues the prosecutor misstated the law of conspiracy, thereby misleading the jury. Notably, defendant does not assert the jury charge on conspiracy misstated the law. We do not find the prosecutor's remarks were capable of producing an unjust result, particularly in light of the appropriate instruction the jury received on conspiracy.

V.

Defendant argues the jury's verdict was against the weight of the evidence because the State's witnesses were not credible, however, he did not move in the

trial court for a new trial on that ground. "[T]he issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." R. 2:10-1. "We do not consider a weight-of-the-evidence argument on appeal unless the appellant moved in the trial court for a new trial on that ground." State v. Fierro, 438 N.J. Super. 517, 530 (App. Div. 2015) (citing R. 2:10-1; State v. Perry, 128 N.J. Super. 188, 190 (App. Div. 1973), aff'd, 65 N.J. 45 (1974)).

In any event, we find no merit in defendant's claim. R. 2:11-3(e)(2). Defendant's argument is premised on the purported lack of credibility of the State's witnesses. "As the trial court properly instructed the jury, it was the jury's province to assess the credibility of all of the evidence. '[C]redibility is an issue which is peculiarly within the jury's ken.'" State v. Cole, 229 N.J. 430, 450 (2017) (alteration in original) (quoting State v. Frisby, 174 N.J. 583, 595 (2002)). We find no basis to overturn the jury's verdict.

## VI.

Last, defendant argues his sentence is excessive, claiming the trial court over-valued the aggravating factors and failed to apply mitigating factor eleven (imprisonment would entail excessive hardship to defendant or his dependents), N.J.S.A. 2C:44-1(b)(11). We are unpersuaded by this argument.

20

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must be affirmed, unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

We "may not substitute [our] judgment for that of the trial court." State v. Natale, 184 N.J. 458, 489 (2005) (quoting State v. Evers, 175 N.J. 355, 386 (2003)). Thus, we must affirm the defendant's sentence, even if we would have arrived at a different result, as long as the trial court properly identified and balanced the aggravating and mitigating factors. Ibid.

The sentencing court found aggravating factors three (risk defendant will commit another offense), N.J.S.A. 2C:44-1(a)(3); six (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), N.J.S.A. 2C:44-1(a)(6); and nine (need for deterring defendant and others from violating the law), N.J.S.A. 2C:44-1(a)(9). After undertaking a

thorough analysis, the trial court found no mitigating factors and that the aggravating factors substantially outweighed the non-existent mitigating factors.

The trial court noted defendant has incurred multiple juvenile adjudications, eight prior criminal convictions, and six prior municipal court convictions. Defendant acknowledges he has a lengthy criminal record but argues the trial court "somewhat overstated and over-valued" it. He disputes the juvenile record shown in the Presentence Report, claiming he has no juvenile record. Defendant also claims he has been arrested twenty-four times, not forty-five times. He submits his record is not one of "unremitting criminality," as stated by the sentencing court.

For the first time on appeal, defendant also asserts the trial court should have applied mitigating factor eleven. The trial judge considered and rejected mitigating factor eleven, finding the sentence would not entail hardship to defendant and his family "over and above . . . any other defendant who would be subject to incarceration."

Our review of the record convinces us that the trial court properly identified and balanced the aggravating and mitigating factors. The defendant's prior adult convictions and the offenses of which he was convicted warrant

application of aggravating factors three, six, and nine. The record also supports the rejection of mitigating factor eleven.

Although eligible, defendant was not sentenced to a discretionary extended term as a persistent offender. Due to "defendant's unremitting criminality" and "virtual total rejection of rehabilitation," the trial court imposed a slightly higher than mid-range ordinary term on the armed robbery and a concurrent term on the unlawful possession of a weapon. The sentence is not manifestly excessive or unduly punitive and does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23